## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **CARNEGIE TECHNOLOGIES, LLC,**<br>    **PLAINTIFF** | §<br>§<br>§<br>§ | |
| **v.** | §<br>§ | **CIVIL ACTION** <u>5:20-cv-271</u> |
| **TRILLER, INC.,**<br>    **DEFENDANT** | §<br>§<br>§<br>§ | |

---

### CARNEGIE TECHNOLOGIES, LLC'S ORIGINAL COMPLAINT

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Carnegie Technologies, LLC, complaining of and about Triller, Inc., and for cause of action shows unto the Court the following:

### I. PARTIES

1.     Plaintiff, Carnegie Technologies, LLC ("Carnegie Technologies" or "Plaintiff"), is a Delaware limited liability company with its principal place of business in Texas. Carnegie Technologies's sole Member and Manager is Carnegie Technologies Holdings, LLC. Carnegie Technologies Holdings, LLC in turn is 90% owned by its sole Manager, Mr. Paul Posner. Mr. Posner is a citizen of the state of Texas. A minority member of Carnegie Technologies Holdings, LLC is Suyai Communications, LLC which in turn is owned by non-California residents.

2.     Defendant Triller, Inc. ("Triller" or "Defendant") is a Delaware corporation with its principal place of business in California. Triller is not registered to do business in Texas but has purposefully availed itself of the privilege of conducting activities within Texas and thus under Federal Rule of Civil Procedure 4(h)(1)(B) and the Texas Long Arm Statute may be served via its

Registered Agent, XL Corporate Services, Inc., c/o Corp 2000, 720 14th Street, Sacramento, California 95814.

## II. JURISDICTION

3.      This is a lawsuit for damages in excess of $75,000.00, excluding interest and costs. The parties are citizens of different states. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

## III. VENUE

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) & (c)(2) because Triller has consented to personal jurisdiction in the state and federal courts located in San Antonio, Texas and thus is a resident for purposes of the venue statute. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## IV. FACTUAL ALLEGATIONS

5.      Carnegie Technologies provided administrative services to its affiliate, Triller, pursuant to an Administrative Services Agreement dated December 1, 2017. Triller recorded a liability on its books for these services but was ultimately unable to pay for the services in cash.

6.      In 2019, Triller was purchased by a third party. In anticipation of closing on the sale of the shares of Triller, an Amended and Restated Administrative Services Agreement (the "Services Agreement") was executed on September 9, 2019, between Triller and Carnegie Technologies. A true and correct copy of the agreement is attached hereto as Exhibit 1.

7.      On October 8, 2019, the closing date of the transaction, and in order to document the debt, Triller signed a Promissory Note payable to Carnegie Technologies in the amount of $4,280,109, a copy of which is attached hereto as Exhibit 2 (the "Promissory Note").

8.      After the sale transaction closed, Carnegie Technologies continued to pay obligations on behalf of Triller and provide services to Triller under the Services Agreement. Carnegie Technologies would then present invoices to Triller for payment. Copies of these invoices are attached hereto as Exhibit 3. Triller has failed to pay these invoices.

9.      Section 4 of the Promissory Note provides that, after written notice and a thirty-day cure period, either of the following constitutes an Event of Default:

            (a)      Failure by Triller to make any required payment of principal, accrued interest or any other amount under this Note when due and payable; or

            (b)      The failure of Triller to materially comply with any of its obligations, agreements and covenants herein or in the Services Agreement.

10.     Triller's refusal to pay the past-due invoice amounts constituted a material failure to comply with the Services Agreement. Accordingly, on January 10, 2020, Carnegie Technologies made written demand on Triller for payment of the past-due invoices in the amount of $339,284.53, inclusive of accrued interest. In the demand, Carnegie Technologies gave Triller the requisite thirty-day period to cure the failure by paying the amount due and owing. To date, well after the cure period has ended, no payment has been received by Carnegie Technologies.

11.     Triller's failure to pay the past-due invoice amounts within the thirty-day cure period constitutes an Event of Default under the Promissory Note, which under the terms of the Promissory Note, gives Carnegie Technologies "the right to accelerate payment of the unpaid Principal Amount and all accrued, unpaid interest payable with regard to [the Promissory] Note.

12.     Carnegie Technologies sent a letter, dated February 26, 2020, to Triller providing formal written notice of the acceleration of the Promissory Note. Carnegie Technologies now files suit to recover the amount due and owing under the Services Agreement and the Promissory Note.

## V. CAUSES OF ACTION

13.     Carnegie Technologies incorporates by reference the factual allegations contained in the preceding paragraphs.

### A.  Breach of Contract

14.     Carnegie Technologies asserts a claim for breach of the Services Agreement, which is a valid and binding contract between Carnegie Technologies and Triller.

15.     Carnegie Technologies has fully performed its obligations under the Services Agreement. Triller has materially breached the Services Agreement by refusing to pay the amounts due and owing to Carnegie Technologies pursuant to Article III of the Services Agreement according to the terms of section 3.3 of the Services Agreement.

16.     Carnegie Technologies was injured as a result, suffering actual damages of upwards of $330,000, plus pre-judgment and post-judgment interest, costs, and attorneys' fees and expenses.

### B.  Suit on Promissory Note

17.     Carnegie Technologies is the owner and holder of the Promissory Note. A failure to materially comply with the Services Agreement that is not cured within 30 days following written notice constitutes an Event of Default of the Promissory Note. Triller has failed to materially comply with the Services Agreement and failed to cure within 30 days following written notice, which is an Event of Default.

18.     Carnegie Technologies has provided Triller with written, formal notice of acceleration of the full amount due and owing under the Promissory Note in the amount of $4,280,109. Triller has failed to comply with the terms of the Promissory Note.

## VI. ATTORNEYS' FEES

19.     Pursuant to Section 38.001 of the Texas Civil Practice & Remedies Code, and as otherwise allowed by law, Plaintiff is entitled to recover from Defendant all of its reasonable attorneys' fees and expenses incurred in connection with this lawsuit. Plaintiff is also entitled to recover from Defendant all costs of court.

20.     Demand has been made thirty days prior to judgment. TEX. CIV. PRAC. & REM. CODE § 38.002.

## VII. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that upon a final hearing of the cause, judgment be entered for Carnegie Technologies, LLC against Triller, Inc. for damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with pre-judgment and post-judgment interest at the maximum rate allowed by law, attorneys' fees, costs of court, and such other and further relief to which Carnegie Technologies may be entitled at law or in equity, whether pled or unpled.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Randall A. Pulman*
    Randall A. Pulman
    Texas State Bar No. 16393250
    rpulman@pulmanlaw.com
    Leslie Sara Hyman
    Texas State Bar No. 00798274
    lhyman@pulmanlaw.com
    Sydnee R. Garcia
    Texas State Bar No. 24092400
    sgarcia@pulmanlaw.com
    *Attorneys for Plaintiff,*
    *Carnegie Technologies, LLC*

# Exhibit 1

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106

 CARNEGIE
TECHNOLOGIES

## AMENDED AND RESTATED
## ADMINISTRATIVE SERVICES AGREEMENT

This Amended and Restated Administrative Services Agreement (this "Agreement") is entered into as of this 9th day of September, 2019 (the "Effective Date"), by and between Carnegie Technologies, LLC, a Delaware limited liability company ("Carnegie"), and Triller, Inc., a Delaware corporation ("Triller"), for the purpose of amending and restating in its entirety that certain Administrative Services Agreement dated as of December 1, 2017, by and between Carnegie and Triller, as amended by that certain First Amendment to Administrative Services Agreement, effective as of December 1, 2017, by and between Carnegie and Triller (collectively, the "Original Agreement").

## RECITALS

WHEREAS, pursuant to the terms of that certain Series A Preferred Stock Purchase Agreement dated as of August 7, 2017, Carnegie's Affiliate (defined below), Denali Digital Media, LLC, a Delaware limited liability ("Denali"), has obtained a controlling interest in Triller (the "Acquisition");

WHEREAS, Triller desires to obtain certain administrative and management services from Carnegie for the purpose of creating efficiencies in the operation and management of its business;

WHEREAS, Carnegie and Triller have entered into this Agreement to set forth the roles and responsibilities with regard to the services to be provided in the future by Carnegie to Triller;

WHEREAS, Carnegie and Triller wish to amend and restate the Original Agreement in its entirety to provide for (i) automatic termination of this Agreement upon a Triller Change of Control (as defined below) and (ii) the provision of Transition Services (as defined below) for a period of [sixty (60)] days following the date of termination of this Agreement (the "Transition Period") .

## AGREEMENT

NOW, THEREFORE, in consideration of the premises and the mutual representations, warranties, covenants, agreements and conditions herein contained, and intending to be legally bound, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

1.1.    Defined Terms. The terms below shall have the following meanings when used herein:

"Accounting Support Services" shall mean financial and accounting support, recordkeeping, customer and vendor billing and collections, order processing, accounts payable processing, and preparing and reporting periodic estimates and results, as further specified in Schedule B.

"Affiliate" means, as to any Person, any other Person that, directly or indirectly, is in control of, controlled by, or under common control with, such Person. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession of the power to vote, or direct the voting of, sufficient securities to elect the manager or a majority of the board of directors or equivalent governing body of such Person; provided, that, for purposes of this Agreement, Triller shall not be deemed to be an Affiliate of Carnegie (and vice versa).

"Agreement" has the meaning set forth in the preamble hereto.

1

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106

 CARNEGIE
TECHNOLOGIES

"Applicable Law" means, with respect to any Person, any federal, state, provincial, local or municipal law, statute, ordinance, rule, regulation, code, judgment, order, injunction, decree or determination of any Governmental Authority and in each case as modified or amended from time to time, applicable to such Person or its Affiliates or their respective assets.

"Business Day" means any day other than a Saturday or Sunday or any other day on which commercial banks in Austin, Texas are authorized or required to close.

"Change of Control" means any entity, other than Denali or one of its Affiliates which was an Affiliate on August 1, 2019, acquiring, directly or indirectly, in the aggregate, more than 50% of the authorized and issued stock of Triller.

"Contract" means any agreement, contract, lease, sublease, license, sublicense, note, loan, evidence of indebtedness, purchase order, letter of credit, indenture, security or pledge agreement, franchise agreement, undertaking or instrument.

"Confidential Information" means any information, in any form or medium, that relates to the business, products, services, research or development of the disclosing party and its Affiliates, and its and their suppliers or customers, including: (a) compilations of data (whether in whole or in part) and all analyses, processes, methods, techniques, systems, formulae, research, records, reports, manuals, documentation and models relating thereto; (b) computer software, documentation and databases (whether existing or in various stages of research and development); (c) identities of and information about the suppliers and customers of the disclosing party and its Affiliates and their respective confidential information, suppliers and customers; (d) inventions, designs, developments, devices, methods and processes (whether or not reduced to practice); (e) internal business information, including, without limitation, information relating to strategic plans and practices, marketing, promotional and sales plans, practices or programs, training practices and programs, cost and pricing structure, and accounting and business methods; (f) all copyrightable works; and (g) all similar or related information.

"Effective Date" has the meaning set forth in the preamble hereto.

"Fully Allocated Cost of Labor" shall mean, with respect to any product or Service provided by Carnegie, the cost of all labor, including without limitation, the cost of all taxes and benefits, overhead, services, and material expenditures attributable to employees, or subcontractors or third-parties hired or retained by Carnegie, providing the Services on behalf of Carnegie to Triller, allocated on a rational basis consistent with the approximate ratio of their efforts spent on Triller to total effort for and on behalf of Carnegie or its non-Triller Affiliates.

"Governmental Authority" means any government or political subdivision thereof, including without limitation any regional or municipal authority, any governmental department, ministry, commission, board, bureau, agency, regulatory authority, instrumentality, or judicial or administrative body, having jurisdiction over the matter or matters in question, whether domestic or foreign.

"HR Services" shall mean the services of the internal human resources department and staff located in San Antonio, Texas, as further specified in Schedule D.

"Management Services" shall mean the management and corporate services provided to Triller by Carnegie's designees as further specified in Schedule A.

"IT Services" shall mean the management information systems services set forth in Schedule E.

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106



"Other Services" shall mean Services not described in this Agreement which will be provided by Carnegie on an as needed basis.

"Person" means any natural person or any sole proprietorship, corporation, limited liability corporation or company, partnership, limited partnership, limited liability partnership, firm, unincorporated organization, association, business trust, joint stock company, joint venture organization, entity, Governmental Authority or business of any kind.

"Rationalization Expenses" shall mean the net expenses incurred by Carnegie pursuant to this Agreement directly resulting from the termination of such Service and disposition of human and physical resources no longer required due to the termination of such Service, including without limitation severance costs relating to the termination of employees no longer required to provide such Service, but net of any proceeds from the disposition of any physical asset used in the provision of such Service.

"Services" shall collectively mean the Tax Services, HR Services, MIS Services, Accounting Support Services, and Management Services provided by Carnegie to Triller pursuant to this Agreement.

"Tax Services" shall mean the services of the internal Carnegie tax department and staff as specified in Schedule C.

"Term" has the meaning set forth in Section 4.1.

"Transition Period" has the meaning set forth in the preamble.

"Transition Services" has the meaning set forth in Section 4.4.

1.2.    Rules of Construction. For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires: (a) words used in this Agreement, regardless of the gender and number specifically used, will be deemed and construed to include any other gender and any other number as the context requires; (b) as used in this Agreement, the word "including" is not limiting, and the word "or" is not exclusive; (c) except as specifically otherwise provided in this Agreement in a particular instance, a reference to an Article or Section is a reference to an Article or Section of this Agreement, and the terms "this Agreement," "hereof," "herein," and other like terms refer to this Agreement as a whole, and not solely to any particular part of this Agreement; (d) the descriptive headings in this Agreement are inserted for convenience of reference only and are not intended to be part of or to affect the meaning or interpretation of this Agreement; and (e) as used in this Agreement, unless otherwise specifically noted herein, the word "day" or "days" means a calendar day or days, respectively, including weekends and holidays.  Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Carnegie or Triller, whether under any rule of construction or otherwise, as a result of the identity of the party or parties who drafted this Agreement or any provision hereof.

## ARTICLE II
## CARNEGIE OBLIGATIONS

2.1.    General. Triller hereby authorizes, directs, and appoints Carnegie to provide the Services, as such applicable to Triller's day-to-day operations and periodic reporting requirements during the Term. Without limiting the foregoing, to the extent practicable, Carnegie shall use the employees, subcontractors, systems, platforms, and other business infrastructure it utilizes to conduct and manage its own business and the businesses of its Affiliates (rather than using employees, subcontractors, systems, platforms and other business infrastructure dedicated solely to Triller) to provide the Services provided for

3

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106


CARNEGIE
TECHNOLOGIES

in this Agreement. Throughout the Term, Triller shall use commercially reasonable efforts to give Carnegie its full cooperation and support with respect to the provision of the Services, and supply any and all reasonably requested information to Carnegie in a timely manner. Accordingly, Triller shall comply with all reasonable policies and procedures required by Carnegie in connection with Carnegie's performance or provision of Services hereunder, provided that Carnegie provides Triller with advance written notice of such policies and procedures (except in the case of an emergency, in which case notice may be verbal).

2.2. <u>Scheduled Services</u>. Carnegie will provide Triller the following Services, as more specifically described in the Schedule to which each Service corresponds:

| | |
|---|---|
| Management and Administrative Services | Schedule A |
| Accounting Support Services | Schedule B |
| Tax Services | Schedule C |
| HR Services | Schedule D |
| IT Services | Schedule E |

2.3. <u>Unscheduled Services</u>. Carnegie will employ commercially reasonable efforts to provide such Other Services as are reasonably requested by Triller in writing. Other Services provided by Carnegie to Triller will be charged based upon the Fully Allocated Cost of such Other Services based upon actual hours worked, unless otherwise agreed, which agreement will be pursued in good faith by both parties.

2.4. <u>Acknowledgements</u>. Triller hereby acknowledges and agrees that Carnegie may perform its duties under this Agreement as part of, and in conjunction with, the other businesses of Carnegie and its Affiliates, and that nothing herein shall preclude Carnegie and its Affiliates from engaging or participating in any business activity or venture (including the acquisition, construction, management, operation or sale of other businesses) or providing any services, and Triller shall have no right hereunder in or to such activities or ventures or the income or profits derived therefrom.

## ARTICLE III
## PRICING, BILLING, AND PAYMENT

3.1. <u>Shared Services allocations from Carnegie to Triller</u>. Services performed by specific individuals (including employees, independent contractors, consultants, and other third-parties compensated by Carnegie for their efforts) on behalf of Triller by Carnegie will be charged to and payable by Triller at Carnegie's Fully Allocated Cost of Labor.

3.2 <u>Out-of-Pocket Expenses</u>. In addition to the allocations as described in Section 3.1 above, all (a) reasonable, documented out-of-pocket expenses (including travel expenses) that arise directly out of the provision of Services pursuant to this Agreement and are incurred by Carnegie or its Affiliates and (b) any documented direct costs paid by Carnegie for or on behalf of Triller (collectively, "<u>Expenses</u>") will be reimbursed by Triller.

3.3. <u>Billing and Payments</u>. No later than twenty (20) days after a month end during the Term and during such time as Transition Services are being provided, Triller will be allocated the amounts described in <u>Sections 3.1</u> and <u>3.2</u> incurred during such month and Carnegie will notify Triller of the amount due, which shall be due and payable by the end of that month. For illustrative purposes, allocations and Expenses for December will be allocated prior to January 20th and payment will be due January 31st. Any amounts owed by Triller under this Agreement that are not paid when due shall bear interest, from the time the payment was due until the time paid, at a rate of ten percent (10%) per annum, compounded annually.

## ARTICLE IV
## TERM AND TERMINATION

4.1. <u>Term</u>. The initial term (together with any extensions, the "<u>Term</u>") of this Agreement shall

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106



commence upon the Effective Date and shall expire on December 31st 2019 Upon expiration of the initial Term, this Agreement and the Term shall automatically renew for successive periods of one (1) year unless terminated pursuant to Section 4.2.

4.2     Termination. This Agreement shall remain in full force and effect until terminated for any reason as provided below:

(a)     Either party provides written notice of non-renewal not less than thirty (30) days prior to the end of the then current Term; or, notwithstanding the foregoing, this Agreement may be earlier terminated by either party at any time, for any reason or no reason, upon ninety (90) days' prior written notice to the other party.

(b)     If either party breaches this Agreement, the non-breaching party provides written notice to the breaching party detailing the breach, and the breaching party fails to cure such breach within ten (10) days of receipt of the notice, then the non-breaching party shall have the right to terminate this Agreement.

(c)     In the event that Triller shall, for any reason, be dissolved or enter a petition in bankruptcy, this Agreement shall automatically terminate.

(d)     In the event of a Change of Control this Agreement shall automatically terminate on the date such Change of Control is effective.

4.3     Effect of Termination. Triller shall pay to Carnegie all amounts accrued as of the effective date of termination for Carnegie's Services and payable pursuant to Section 3 of this Agreement within twenty (20) days after the effective date of termination.

4.4     Continuing Obligation. Following any termination of this Agreement or any one or more Services, Carnegie shall, provided the payment obligation in Section 4.3 has been complied with, continue to provide Triller Services for sixty (60) days and cooperate in good faith with Triller to transfer and/or retain all records, prepare and file tax returns, and take all other actions reasonably necessary to (a) provide Triller with sufficient information to make alternative service arrangements substantially consistent with those contemplated by this Agreement with respect to the terminated Services, and (b) reduce any and all costs to Triller as a result of the termination of this Agreement, including but not limited to any Rationalization Expenses (the "Transition Services"). Triller shall reimburse Carnegie for its cost of providing Transition Services pursuant to this Section 4.4, and shall pay amounts owed hereunder within twenty (20) days after the date on which Triller has received Carnegie's statement for such Transition Services. Carnegie shall bill monthly for Transition Services. The Initial Transition Plan is attached hereto as Schedule F.

4.5     Liability for Rationalization Expenses. In the event this Agreement or a particular Service is terminated by either party, Triller will reimburse Carnegie for all reasonable Rationalization Expenses directly related to such termination. Carnegie will notify Triller of any employees that Carnegie intends to terminate as a result of a termination of this Agreement or a particular Service, and Triller shall have the right to hire such terminated employee. If Triller elects to hire such employee, Carnegie and Triller will work together in good faith to limit the Rationalization Expenses resulting from the termination of such employee by Carnegie.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES

Each party hereby represents and warrants to the other party as of the Effective Date as follows:

5.1.     Organization, Standing and Authority. The party is duly organized, validly existing and in

5

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106



good standing under the laws of the jurisdiction where it is formed, that it has all requisite limited liability company or corporate, as applicable, power and authority to enter into this Agreement and to consummate the transactions contemplated herein, that all acts and other proceedings required to be taken to authorize the execution, delivery and performance hereof and the consummation of the transactions contemplated herein have been duly and properly taken, and that this Agreement has been duly executed and delivered by it and constitutes the legal, valid and binding obligation of the party, enforceable against it in accordance with its terms, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles.

5.2.    No Violation. The execution and delivery by the party of this Agreement and the consummation of the transactions contemplated hereby and compliance with the terms hereof will not (a) conflict with or result in any violation of any provision of the organizational documents of the party, (b) conflict with, result in a violation or breach of, or constitute a default, or give rise to any right of termination, revocation, cancellation, or acceleration, under, any material contract, concession or permit issued to the party, except for any such conflict, violation, breach, default or right which is not reasonably likely to have a material adverse effect on the ability of the party to consummate the transactions contemplated by this Agreement, or (c) conflict with or result in a violation of any judgment, order, decree, writ, injunction, statute, Applicable Law, ordinance, concession, permit, rule or regulation applicable to the party or to the property or assets of the party, except for any such conflict or violation which is not reasonably likely to have such a material adverse effect.

5.3.    Consents and Approvals. No consent, approval, license, permit, order or authorization of, registration, declaration or filing with, or notice to, any Governmental Authority is required to be obtained or made by or with respect to any party in connection with the execution and delivery hereof or the consummation of the transactions contemplated hereby. The parties have or will obtain all necessary consents, approvals, authorizations and permits necessary to perform fully hereunder.

## ARTICLE VI
## LIMITATION OF LIABILITY AND INDEMNITY

6.1.    Limited Responsibility. Each party will be responsible only for services and facilities which are provided by that party, its authorized agents, subcontractors, or others retained by such Persons, and no party will bear any responsibility for the services and facilities provided by the other party, the other party's agents, subcontractors, or other Persons retained by such Persons.

6.2.    Limitation of Liability. The maximum liability of Carnegie to, and the sole remedy of, Triller for breach of this Agreement, or otherwise with respect to the Services, is a refund of the price paid for the particular Service or, at Triller's option, a redelivery (or delivery) of the Service.

6.3.    No Liability for Indirect Losses. Neither party will be liable to the other party or any of its Affiliates for any indirect, incidental, consequential or special damages (including damages for lost revenues, lost savings, or lost profits, whether direct or indirect, suffered by such party or any of its Affiliates), regardless of the form of action, whether in contract, warranty, strict liability, or tort, including negligence of any kind whether active or passive, and regardless of whether the parties or their respective Affiliates knew of the possibility that such damages could result. The parties (for themselves and their respective Affiliates) hereby release each other and their respective Affiliates, officers, directors, employees, and agents from any such claim.

6.4.    Indemnity. Subject to Sections 6.2 and 6.3, Carnegie agrees to indemnify and hold Triller harmless from and against any damages, loss, cost, or liability (including reasonable legal fees and expenses) arising out of or resulting from a third-party claim regarding Carnegie's performance, purported performance, or nonperformance of this Agreement, provided however, Carnegie shall have no obligation

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106



under this Section 6.4 to the extent such third-party claim arises in connection with, is caused in whole or part by, Triller's performance, non-performance, or purported performance of this Agreement.

## ARTICLE VII
## MISCELLANEOUS

7.1.    Confidentiality. Each party acknowledges that the other possesses, and will continue to possess, Confidential Information that has been created, discovered, or developed by them and/or in which property rights have been assigned or otherwise conveyed to them, which information has commercial value and is not in the public domain. The Confidential Information of each party will remain the sole property of such party and its assigns. Each party shall use the same degree of care that it normally uses to protect its own Confidential Information to prevent the unauthorized disclosure to third parties of Confidential Information that has been identified as proprietary by the other party. Neither party shall make any use of the Confidential Information of the other which has been identified as proprietary except as contemplated or required by the terms of this Agreement. Notwithstanding the foregoing, this Section 7.1 shall not apply to any Confidential Information that a party can demonstrate: (a) was, at the time of the disclosure to it, in the public domain through no fault of such party; (b) was received after disclosure to it from a third party who had a lawful right to disclose such information to it; or (c) was independently developed by the receiving party.

7.2.    No Implied Assignments or Licenses. Nothing in this Agreement shall be construed as an assignment or grant of any right, title of interest in and to any trademark, copyright, design or trade dress, patent right or other intellectual or industrial property right of either party to the other.

7.3.    No Violation. Nothing in this Agreement will obligate a party to take any action that violates Applicable Law. In no event will a party be obligated to perform any acts or to abstain from performing any act if, in the party's reasonable legal and/or business judgment, performance or non performance will violate Applicable Laws.

7.4.    Assignment. Neither this Agreement nor any of the rights or obligations hereunder may be assigned by any party without the prior written consent of the other party; except that Carnegie may, without such consent, assign all such rights to any lender as collateral security and assign all such rights and obligations to a wholly owned subsidiary or subsidiaries of Carnegie or to a successor in interest to Carnegie which shall assume all obligations and liabilities of Carnegie under this Agreement. Notwithstanding the above, any such assignment shall not relieve the assignor of any of its obligations hereunder. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

7.5.    Entire Agreement; Amendments and Waivers. This Agreement constitutes the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties pertaining to the subject matter hereof. This Agreement may not be amended except by an instrument in writing signed on behalf of each of the parties hereto. No amendment, supplement, modification or waiver of this Agreement shall be binding unless executed in writing by the party or parties to be bound thereby. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision hereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

7.6.    Force Majeure. Neither party shall be liable for any delay or failure in performance of any part of this Agreement by reason of any act of nature, act of civil or military authority, government regulation, embargo, epidemic, terrorist act, riot, insurrection, fire, explosion, earthquake, nuclear accident, flood, work stoppage, equipment failure, cable cut, power blackout, volcanic eruption, other major

7

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106



environmental disturbance or unusually severe weather condition or similar event or cause beyond its control and without its fault or negligence. In such event, the party affected will, upon giving prompt notice to the other party, be excused from such performance on a day to day basis to the extent of such interference (and the other party will likewise be excused from performance of its obligations on a day to day basis to the extent such party's obligations are related to the performance so interfered with). The affected party will use commercially reasonable efforts to avoid or remove the cause of nonperformance and bothparties will proceed to perform with dispatch once the causes are removed or cease. Carnegie shall not be liable for any delay or failure in performance of any part of this Agreement to the extent resulting from Carnegie's inability to obtain any necessary permit, license, zoning approval or other governmental consent required to operate Triller's business, in each case without any fault or negligence of Carnegie or any of its Affiliates.

    7.7.   <u>Relationship of Parties</u>. Each party shall perform services hereunder as an independent contractor and nothing herein shall be construed as creating any other relationship between the parties. The relationship established by this Agreement will not be construed to create a partnership, joint venture, or any other form of legal entity, nor establish any fiduciary relationship among the parties or any Affiliate of any party. The provision of the services described in this Agreement does not establish any joint undertaking, joint venture, pooling arrangement, partnership, fiduciary relationship or formal business organization of any kind.

    7.8.   <u>Invalidity</u>. In the event that any one or more of the provisions contained in this Agreement or in any other instrument referred to herein, shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, then to the maximum extent permitted by law, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement or any other such instrument. Moreover, the parties agree that the invalid or unenforceable provision shall be enforced to the maximum extent permitted by law in accordance with the intention of the parties as expressed by such provision.

    7.9.   <u>Third Party Beneficiaries</u>. The covenants and agreements contained in this Agreement are for the sole benefit of the parties hereto, and they shall not be construed as conferring any rights or benefits on any other Persons.

    7.10.   <u>Governing Law</u>. This Agreement shall be construed, interpreted and the rights of the parties determined in accordance with the laws of the State of Texas (without application of principles of conflicts of law).

    7.11.   <u>Consent to Jurisdiction; Forum Selection; Waiver of Jury Trial</u>. The parties hereto agree that any actions or proceedings arising in connection with this Agreement shall be tried and litigated exclusively in the state or federal courts located in San Antonio, Texas. The aforementioned choice of venue is intended by the parties to be mandatory and not permissive in nature, thereby precluding the possibility of litigation between the parties with respect to or arising out of this Agreement in any jurisdiction other than those specified in this <u>Section 7.11</u>. Each party hereby waives any right it may have to assert the doctrine of forum non conveniens or similar doctrine or to object to venue with respect to any proceeding brought in accordance with this <u>Section 7.11</u> and stipulates that the state or federal courts located in San Antonio, Texas shall have personal jurisdiction over each of them for the purpose of litigating any dispute, controversy or proceeding arising out of or related to this Agreement. Each party hereby authorizes and accepts service of process sufficient for personal jurisdiction in any action against it as contemplated by this <u>Section 7.11</u> by registered or certified mail, return receipt requested, postage prepaid, to its address set forth below. THE PARTIES HERETO HEREBY EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHT, POWER OR REMEDY UNDER OR IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREUNDER OR UNDER OR IN CONNECTION WITH ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH OR ARISING FROM ANY

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106



RELATIONSHIP EXISTING IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREUNDER, AND AGREE THAT ANY SUCH ACTION SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. The terms and provisions of this <u>Section 7.11</u> constitute a material inducement for the parties entering into this Agreement.

     7.12.   <u>Notices.</u> Any notice, request, demand, waiver, consent, approval or other communication which is required or permitted hereunder shall be in writing and shall be deemed given only if delivered personally or sent by registered or certified mail or by Federal Express or other overnight mail service, postage prepaid, or by fax, with written confirmation to follow, as follows:

> If to Carnegie, to:
> Carnegie Technologies, LLC
> 9737 Great Hills Trail, Suite 100
> Austin, Texas 78759
> Attention: Paul Posner
>
> If to Triller, to:
> 12575 Beatrice St.
> Los Angeles, CA 90066
> Attention: Mike Lu

or to such other address or facsimile numbers as the addressee may have specified in a notice duly given to the sender as provided herein. Such notice, request, demand, waiver, consent, approval or other communication will be deemed to have been given as of the date so delivered.

     7.13.   <u>Counterparts.</u> This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument and all of which counterparts taken together shall constitute but one and the same instrument. This Agreement shall become binding when one or more counterparts taken together shall have been executed and delivered by all of the parties hereto. The parties hereto intend to sign and deliver this Agreement by facsimile or other electronic transmission. Each party hereto agrees that the delivery of this Agreement by facsimile or other electronic transmission shall have the same force and effect as delivery of original signatures and that each party may use such facsimile signatures as evidence of the execution and delivery of this Agreement by all parties to the same extent that an original signature could be used.

[Signatures on following page]

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106

 CARNEGIE
TECHNOLOGIES

   IN WITNESS WHEREOF, the parties hereto have executed this Amended and Restated Administrative Services Agreement as of the Effective Date.

**TRILLER:**

Triller, Inc.
a Delaware corporation

By:_____
   Name: Mike Lu
   Title: Chief Executive Officer

**CARNEGIE:**

Carnegie Technologies, LLC
a Delaware limited liability company

By:_____
   Name: Paul Posner
   Title: Manager

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106

 **CARNEGIE TECHNOLOGIES**

SCHEDULE A
MANAGEMENT AND ADMINISTRATIVE SERVICES

1.    Negotiating, as agent for Triller, and administering such Contracts and property interests as Carnegie may deem necessary or desirable for the conduct of the business of the Triller;

2.    Negotiating, as agent for Triller, and administering such Contracts for the provision of services, supplies, office or other types of space, utilities, concessions and the like;

3.    Selecting, evaluating, changing or modifying facilities and vendors for Triller and acquiring, on behalf of and in the name of Triller, such assets or rights to use assets for the operation, expansion, or modification of the business of the Triller;

4.    Negotiating and procuring, as agent for Triller, and administering property, casualty, liability and other insurance for Triller, either directly or in combination with similar insurance coverage of Carnegie and its Affiliates;

5.    Providing and supporting such other technical, operational, project coordination, and back-office services for Triller's business;

6.    Implementing sales and marketing plans for Triller's business, including retaining such sales personnel and technical support for sales operations, and arranging for such marketing vehicles for the marketing and sale of the products and services of Triller, as Triller may deem necessary or desirable;

7.    Arranging for and procuring legal, regulatory and external affairs services relating to Triller;

8.    Preparing and coordinating regulatory filings, applications, reports, documents and other matters with or to, and paying or causing the payment of fees and assessments imposed on Triller by, Governmental Authorities as Carnegie may deem necessary or appropriate to comply with Applicable Laws; and

9.    Providing such other services and doing such other acts as Carnegie deems necessary or appropriate to operate and conduct the business and affairs of Triller.

Management services provided by Carnegie pursuant to this Agreement shall be carried out by one or more individuals designated by Carnegie to act on behalf of Triller. From time to time, Carnegie may designate certain individuals as corporate officers of Triller in order to provide one or more of the services outlined above.. Individuals designated by Carnegie with the following titles shall have the powers to carry out the Services set forth in this Agreement as follows:

(a)    President. The President shall be the chief executive officer of Triller, shall be responsible for the general and active management of the business of Triller and shall see that all Services provided by Carnegie in this Exhibit A are carried into effect.

(b)    Vice President. In the absence of the President or in the event of the President's inability to act, the Vice President, if any (or in the event there be more than one Vice President, the Vice Presidents in the order designated by Carnegie, or in the absence of any designation, then in the order of their election), shall perform the

11

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106



duties of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President.

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106

 **CARNEGIE TECHNOLOGIES**

## SCHEDULE B
## ACCOUNTING SUPPORT SERVICES

1. Keeping or causing to be kept accounts, books, and records with respect to the operation of Triller that are true and accurate in all material respects;

2. Preparing and filing or causing to be prepared and filed applicable federal, provincial, and local tax returns for Triller;

3. Preparing reports of financial and operating statistics and statements of the capital accounts of Triller;

4. Collecting and depositing in the accounts of Triller payments received in connection with the business of Triller, and arranging for the payment of all costs and expenses incurred in connection with the operation of Triller;

5. Implementing mechanisms and systems for billing for the products and services of the business of the Triller or entering into arrangements to procure on behalf of Triller such billing mechanisms and systems;

6. Managing or directing Triller's payment or satisfaction of Triller's financial obligations, including without limitation operational, employment, marketing or administrative expenses; including but not limited to:

   a. Accounts Payable;

   b. Accounts Receivable;

   c. Inventory;

   d. General Ledger; and

   e. Bank Reconciliation Accounting Services.

13

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106

 **CARNEGIE TECHNOLOGIES**

SCHEDULE C
TAX SERVICES

1.    Tax Compliance – Federal, State and Local

2.    Tax Consultancy

3.    Tax Accounting

4.    Tax Planning

5.    Tax Returns

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106

 **CARNEGIE TECHNOLOGIES**

SCHEDULE D
HR SERVICES

1.  Payroll

2.  401k Administration

3.  Recruiting / hiring Processing

4.  Employee Records Management

5.  Employee Maintenance

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106

 CARNEGIE
TECHNOLOGIES

SCHEDULE E
IT SERVICES

1.    E Mail System

2.    Oracle Systems Maintenance

3.    Phone Systems

4.    Computer maintenance

5.    IT Help Desk

6.    Data Retention and Backup

7.    Software, Computer and Communication Equipment Procurement

8.    Project Management

16

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106



**Schedule F**
**Initial Transition Plan**

1. **Triller credit cards.** With respect to Triller credit cards used for Triller operations that Carnegie pays for, including auto-drafts, shall be transitioned to another form of payment by Triller within thirty (30) days of termination. Carnegie will cancel authorization for any such cards after thirty days after termination. This includes the AWS charge, which is approximately $50,000 per month, and which is charged to a Carnegie accounting AMEX credit card

2. **San Francisco Office.** Currently Triller employees share office space with Denali Publishing, LLC in San Francisco. This rent is charged 50%/50% between the two entities. Triller shall determine if it wishes to continue to occupy this space and shall notify Carnegie within ten (10) days of termination that it either: (a) It would like to keep the space in which case it shall arrange with the Landlord to transfer the lease into its name and reimburse Carnegie for the deposit and Denali shall vacate the premises within sixty (60) days of termination; or (b) Triller wishes to vacate the premises within sixty (60) after termination..

3. **Allocated Employees.** There are several employees of by Carnegie currently working for the direct benefit of Triller and allocated at 40%-60% of their respective cost to Triller. Triller shall provide a Proposed Employee Transfer List to Carnegie within ten (10) days of termination and the parties shall negotiate in good faith to agree on an Agreed Employee Transfer List. Triller shall offer employees on the Agreed Employee Transfer List employment, and employ said employees via the Triller Trinet PEO, within the earlier of: (a) thirty (30) days of the establishment of the Agreed Employee Transfer List; or (b) sixty (60) days after termination.

4. **Carnegie Insurance.** Carnegie provides Triller coverage for Directors and Officers liability, Employment Practices Liability, Crime, and Fiduciary Liability. This coverage will end upon Change of Control.

5. **Denali Insurance.** Denali has an insurance policy for Triller covering general liability, hired/non-owned auto liability, professional liability and cyber liability. This coverage will end upon Change of Control.

6. **SVB Bank Accounts.** Triller has two bank accounts with Silicon Valley Bank (SVB), one for Triller operational expenses and one for Triller influencers ("Triller Influencers"). Triller shall complete such documents as SVB requires in the event of termination within ten (10) days of termination.

7. **Pay Pal.** Triller has a Pay Pal account linked to Triller Influencer bank account. Triller shall complete such documents as Pay Pal requires in the event of termination within ten (10) days of termination.

8. **Continued Support.** To the extent that Carnegie provides administrative, employee, financial and other support pursuant to this Agreement in support of any Transition Period, it shall invoice for Transition Services. Transition Services may include any Services and are contemplated to include employee expenses in support of accounting, legal, executive, IT & HR. These Services primarily include:
   a. Transiting General Ledger detail and supporting accounting schedules/support to new Triller team;
   b. Answering questions on day-to-day nuances as they arise.
   c. Transitioning employees from Carnegie to Triller Trinet PEO.
   d. Transitioning IT systems and support.
   e. Tracking and invoicing Triller for shared services invoices.

DocuSign Envelope ID: 8BA6BA4B-9098-440D-876A-4E2C26882106



    f.   Transitioning any pending VISA applications to new company.

325087932.2

18

# Exhibit 2

# PROMISSORY NOTE

$4,280,109                  October 8, 2019 (the "**Effective Date**")

**FOR VALUE RECEIVED**, Triller, Inc., a Delaware corporation ("**Triller**"), having its principal place of business at 9737 Great Hills Trail, Ste. 260, Austin, Texas 78759, promises to pay to the order of Carnegie Technologies, LLC, a Delaware limited liability company ("**Carnegie**"), at 9737 Great Hills Trail, Ste. 260, Austin, Texas 78759, the principal sum of $4,280,109 (the "**Principal Amount**"), together with all interest accruing on the outstanding balance of the Principal Amount after Effective Date at a fixed rate of ten percent (10%) per annum. Interest shall compound annually on each anniversary of the Effective Date (each such date, an "**Interest Payment Date**"). This Promissory Note (this "**Note**") is issued in accordance with the terms of that certain Amended and Restated Administrative Services Agreement (together with all amendments, modifications and supplements thereto, the "**Services Agreement**"), by and between Triller and Carnegie, dated as of August 29, 2019, and that certain Contribution and Purchase Agreement of even date herewith (the "**Purchase Agreement**") by and among Triller Acquisition, LLC ("**Triller Acquisition**"), Denali Digital Media, LLC, Triller Legacy, LLC ("**Legacy**") and Triller Hold Co, LLC. All capitalized terms used but not defined herein shall have the meanings set forth in the Purchase Agreement.

1.      <u>Payment Terms</u>. Triller agrees to pay all of the interest due on any Interest Payment Date by capitalizing and adding such interest to the then-outstanding Principal Amount. Payment of the Principal Amount, and all accrued and unpaid interest, is due on the date which is two (2) years from the Effective Date, as it may be extended from time to time (the "**Maturity Date**"). If the Maturity Date shall be a day other than a business day such date shall be extended to the next succeeding business day and interest shall be payable at the rate specified in this Note during such extension. Notwithstanding the foregoing, in the event that Legacy, an affiliate of Triller, is entitled to any Milestone Payments from Triller Acquisition under the Purchase Agreement, then the portion of the outstanding Principal Amount covered by any such Post-Closing Payment shall immediately become due and payable within three (3) business days of the applicable Payment Date.

2.      <u>Notices</u>. All notices or other written communications hereunder shall be delivered in accordance with Section 7.12 of the Services Agreement.

3.      <u>Interest Rate Limitation</u>. Notwithstanding anything in this Note to the contrary, no provision of this Note shall require the payment or permit the collection of interest in excess of the highest rate permitted by applicable law, and any portion of the interest otherwise payable under this Note which is in excess of the highest rate permitted by applicable law shall be cancelled automatically or (if theretofore paid) shall, at the option of Triller, be refunded to Triller or credited to the Principal Amount.

4.      <u>Event of Default</u>. Each of the following shall constitute an "**Event of Default**" in the event that Triller has not cured the same within thirty (30) days following written notice from Carnegie:

1

(a)     Failure by Triller to make any required payment of principal, accrued interest or any other amount under this Note when due and payable; or

(b)     The failure of Triller to materially comply with any of its obligations, agreements and covenants herein or in the Services Agreement.

5.     <u>Remedies Upon Event of Default</u>. Upon the occurrence of an Event of Default described in Section 4 above, Carnegie shall have the right to accelerate payment of the unpaid Principal Amount and all accrued, unpaid interest payable with regard to this Note.

6.     <u>Repayment</u>. Amounts due under this Note may be prepaid at any time, in whole or in part, without penalty.

7.     <u>Successors and Assigns</u>.   This Note shall be binding upon Triller and its successors and assigns and shall inure to the benefit of Carnegie and its successors and assigns.

8.     <u>Counterparts</u>. This Note may be executed in any number of counterparts, each of which counterparts shall be deemed to be an original and all of which together shall constitute but one and the same Note.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

2

DocuSign Envelope ID: CB015DF0-3A47-4418-99E4-8123817AA2D8

IN WITNESS WHEREOF, this Note has been executed by Triller as of the date first set forth above.

**TRILLER**:

**Triller, Inc.**
a Delaware corporation

By: _Mike Lu_____

Name: __Mike Lu__

Title:   Chief Executive Officer

# Exhibit 3

 CARNEGIE TECHNOLOGIES

# Invoice

### #INVCT1230
11/30/2019

| Bill To | Ship To | TOTAL | $203,050.84 |
|---------|---------|-------|-------------|
| Triller Inc.<br>United States | | | **Due Date: 12/31/2019** |

| Terms | Due Date | PO # | Shipping Method | Partner |
|-------|----------|------|-----------------|---------|
| Net 20 | 12/31/2019 | | FXG | |

| Quantity | Item | Options | Rate | Amount |
|----------|------|---------|------|--------|
| 1 | **Expenses Paid by CTech**<br>201910 Payroll Allocations | | $93,487.16 | $93,487.16 |
| 1 | **Expenses Paid by CTech**<br>201910 Expenses paid with CTech credit cards | | $86,426.70 | $86,426.70 |
| 1 | **Expenses Paid by CTech**<br>201910 AP paid by CTech | | $23,136.98 | $23,136.98 |

| | |
|---|---|
| **Subtotal** | $203,050.84 |
| **Tax (0%)** | $0.00 |
| **Total** | $203,050.84 |

**For Electronic Payments:**
Silicon Valley Bank
3003 Tasman Dr.
Santa Clara, CA 95054

**ABA/ACH Number:** 121140399
**Account Number:** 3302528159
**Questions Regarding Invoice:**
Contact ar@carnegietechnologies.com

**Check Payable to:**
Carnegie Technologies, LLC
9737 Great Hills Trails
Suite #100
Austin, TX 78759


INVCT1230

1 of 1

 **CARNEGIE TECHNOLOGIES**

# Invoice

### #INVCT1231
12/13/2019

| Bill To | Ship To | | |
|---|---|---|---|
| Triller Inc.<br>United States | | **TOTAL** | **$114,238.56** |
| | | | **Due Date: 12/31/2019** |

| Terms | Due Date | PO # | | Shipping Method | Partner |
|---|---|---|---|---|---|
| Net 20 | 12/31/2019 | | | FXG | |

| Quantity | Item | Options | Rate | Amount |
|---|---|---|---|---|
| 1 | **Expenses Paid by CTech**<br>201910 Payroll Allocations | | $9,477.77 | $9,477.77 |
| 1 | **Expenses Paid by CTech**<br>201910 Expenses paid with CTech credit cards | | $81,358.58 | $81,358.58 |
| 1 | **Expenses Paid by CTech**<br>201910 AP paid by CTech | | $23,402.21 | $23,402.21 |

| | |
|---|---|
| **Subtotal** | $114,238.56 |
| **Tax (0%)** | $0.00 |
| **Total** | $114,238.56 |

**For Electronic Payments:**
Silicon Valley Bank
3003 Tasman Dr.
Santa Clara, CA 95054

**ABA/ACH Number:** 121140399
**Account Number:** 3302528159
**Questions Regarding Invoice:**
Contact ar@carnegietechnologies.com

**Check Payable to:**
Carnegie Technologies, LLC
9737 Great Hills Trails
Suite #100
Austin, TX 78759


INVCT1231

1 of 1

 **CARNEGIE TECHNOLOGIES**

# Invoice

### #INVCT1232
12/20/2019

| Bill To | Ship To | | |
|---------|---------|---|---|
| Triller Inc.<br>United States | Triller Inc.<br>United States | **TOTAL** | **$21,071.41** |
| | | | **Due Date: 01/09/2020** |

| Terms | Due Date | PO # | Shipping Method | Partner |
|-------|----------|------|-----------------|---------|
| Net 20 | 01/09/2020 | | FXG | |

| Quantity | Item | Options | Rate | Amount |
|----------|------|---------|------|--------|
| 1 | **Expenses Paid by CTech**<br>201912 Payroll Allocations | | | $6,092.08 |
| 1 | **Expenses Paid by CTech**<br>201912 Expenses paid with CTech credit cards | | | $4,354.33 |
| 1 | **Expenses Paid by CTech**<br>201912 AP paid by CTech | | | $10,625.00 |

| | |
|---|---|
| Subtotal | $21,071.41 |
| Tax (0%) | $0.00 |
| **Total** | **$21,071.41** |

**For Electronic Payments:**
Silicon Valley Bank
3003 Tasman Dr.
Santa Clara, CA 95054

**ABA/ACH Number:** 121140399
**Account Number:** 3302528159
**Questions Regarding Invoice:**
Contact ar@carnegietechnologies.com

**Check Payable to:**
Carnegie Technologies, LLC
9737 Great Hills Trails
Suite #100
Austin, TX 78759

1 of 1


INVCT1232

JS 44  (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Carnegie Technologies, LLC.

## DEFENDANTS
Triller, Inc.

**(b)** County of Residence of First Listed Plaintiff   **Travis County Texas**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   **Los Angeles County CA**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Randall Pulman
Pulman, Cappuccio & Pullen
2161 NW Military Hwy # 400 San Antonio, TX 78213 210-222-9494

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 2   U.S. Government Defendant
- ☐ 3   Federal Question *(U.S. Government Not a Party)*
- ☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332
Brief description of cause:
Breach of contract on promissory note

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ 4,619,393.53
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE 3/5/2020
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____