IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CARNEGIE TECHNOLOGIES, LLC, PLAINTIFF; | § § § | |
| *Plaintiff,* | § § | SA-20-CV-00271-FB |
| vs. | § § § | |
| TRILLER, INC., DEFENDANT; | § § | |
| *Defendant.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [#8]. All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#18]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). In issuing this report and recommendation, the undersigned has also considered Plaintiff's Response [#15] and Defendant's Reply [#16]. For the reasons set forth below, it is recommended that Defendant's motion be **DENIED**.

## I.  Background

This case is a breach of contract action between Plaintiff Carnegie Technologies, LLC ("Carnegie") and its affiliate, Defendant Triller, Inc. ("Triller"). Carnegie's Original Complaint alleges that it provided Triller certain administrative services pursuant to an Administrative Services Agreement dated December 1, 2017, but that Triller was unable to pay for the services. (Compl. [#1] at ¶ 5.) The Complaint alleges that Triller was subsequently purchased by a third party in 2019, and the parties executed an Amended and Restated Administrative Services

1

Agreement on September 19, 2019.  (*Id.* at ¶ 6.)  A copy of this Agreement is attached to the Complaint in this case.  (Services Agreement [#1] at 8–25.)

On October 8, 2019, the closing date of the sale of Triller, Triller signed a Promissory Note payable to Carnegie in the amount of $4,280,109.  (Compl. [#1] at ¶ 7.)  The Note is also attached to the Complaint.  (Promissory Note [#1] at 27–29.)  Carnegie alleges that after the sale closed, it continued to pay obligations on behalf of Triller, such as payroll allocations, and to provide services under the parties' agreement, but that Triller failed to pay these invoices.  (Compl. [#1] at ¶ 8.)  Copies of the alleged unpaid invoices are attached to the Complaint.  (Invoices [#1] at 31–33.)  Carnegie contends that it made a written demand to Triller for payment of the past-due invoices in an amount of $339,284.53 on January 10, 2020, and gave Triller 30 days to make payment.  (Compl. [#1] at ¶ 10.)  According to Carnegie, no payment has been received; Triller is in default; and Carnegie has accelerated payment of the unpaid principal amount and interest due under the Promissory Note.  (*Id.* at ¶ 11.)

Carnegie filed this suit on March 5, 2020, to recover the amounts due under the Services Agreement and Promissory Note.  The Complaint asserts causes of action for breach of the parties' Services Agreement and Promissory Note.  (*Id.* at ¶¶ 13–18.)  Triller has moved to dismiss Carnegie's Complaint for failure to state a claim pursuant to Rule 12(b)(6).  Triller argues that documents incorporated by reference into the Promissory Note attached to Carnegie's Complaint establish as a matter of law that Triller's debt was transferred and assigned to a subsidiary of a sister company of Carnegie, Triller Legacy (hereinafter "Legacy"), and that this assignment constitutes a novation extinguishing any contractual obligation of Triller under the Promissory Note.  Triller further argues that, even if it were still bound to the Promissory Note, Carnegie fails to state a claim for liability under the Note, as it references the earlier August 29,

2019 Services Agreement only and not the September 9, 2019 Amended Agreement.  Triller attaches a number of documents to its motion to dismiss: the October 8, 2019 Contribution and Purchase Agreement of Triller (Purchase Agreement [#8-1]) and the October 8, 2019 Assignment of Promissory Note to Triller Legacy (Note Assignment [#8-2]), among other documents.

## II.  Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

Generally, in deciding a motion to dismiss, a court may not look beyond the four corners of the Plaintiff's pleadings without converting the motion to a motion for summary judgment.  *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); Fed. R. Civ. P. 12(d).  The Court may, however, consider documents attached to the complaint and those that are central to the claims at issue and incorporated into the complaint by reference.  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."

*Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted).   However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim.   *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).   In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief.   *See Twombly*, 550 U.S. at 570.

### III. Analysis

This case pleads a simple breach-of-contract action based on the alleged breach of Triller's obligations under the Amended Services Agreement and Promissory Note.   As this case arises under the Court's diversity jurisdiction, Texas law governs this action.   *See Hermann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002).   Texas law also governs the construction of the parties' Agreement and the Promissory Note underlying this suit. (Agreement [#1] at 15, ¶ 17.10.)   However, California law governs the construction of the Note Assignment that allegedly relieves Triller of its liability to Carnegie.   (Note Assignment [#8-2] at ¶ 7.)

Triller's motion to dismiss raises two arguments in favor of the dismissal of Carnegie's Complaint—(1) the pleadings and documents before the Court establish the affirmative defense of novation as a matter of law, and (2) the Promissory Note cannot give rise to Triller's liability because it refers to the original Services Agreement as opposed to the parties' amended agreement.   The undersigned will briefly address the latter argument first.

**A.      Carnegie sufficiently pleads default under the Promissory Note.**

Triller argues that Carnegie fails to state a claim for Triller's default under the Promissory note because the Note is inconsistent with the pleadings in that it refers to the wrong Services Agreement.  Triller asks Carnegie to provide a more definite statement to clarify this discrepancy.  This argument is without merit, and the Court will not require a more definite statement.  The Promissory Note forming the basis of Carnegie's claim is attached to the Complaint as an exhibit and there can be no confusion regarding the identity of the debt underlying this suit.  Moreover, as Carnegie points out in its response, any issue regarding the inconsistency between the dates in the Services Agreement and Amended Services Agreement can be addressed in discovery.

**B.      Triller has not established its affirmative defense as a matter of law.**

Triller's motion to dismiss also argues that the assignment of the Promissory Note to Legacy constitutes a novation and relieves Triller of any contractual obligation to Carnegie.  "Novation is the creation of a new obligation in the place of an old one, by which the parties agree that a new obligor will be substituted to perform the duties agreed upon by the old contract, while the original obligor is released from performing those duties." *Vandeventer v. All Am. Life & Cas. Co.*, 101 S.W.3d 703, 712 (Tex. App.—Fort Worth 2003, no pet.).  Under Texas law, a novation is an affirmative defense to a claim for breach of contract.  *Fulcrum Central v. Autotester, Inc.*, 102 S.W.3d 274, 277 (Tex. App.—Dallas 2003, no pet.).  "Although dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006).  Even considering the related contracts

before the Court, Triller has not established it is entitled to the dismissal of Carnegie's Complaint as a matter of law based on its novation defense.

      i.    **The Court may consider the documents attached to Triller's Motion to Dismiss in evaluating whether Triller has established its affirmative defense as a matter of law.**

Carnegie argues that Triller's affirmative defense is not appropriate for resolution on a motion to dismiss because it does not appear on the face of the Complaint.  It is true that Carnegie does not reference the Note Assignment in its Complaint.  However, Carnegie's Complaint does reference the purchase of Triller by a third party in 2019.  (Compl. [#1] at ¶ 6.)  And the Promissory Note attached to Carnegie's Complaint expressly states that it was "issued in accordance with the terms of . . . that certain . . . Purchase Agreement of even date herewith." (Promissory Note [#1] at 27.)  This Purchase Agreement in turn references and incorporates the Note Assignment giving rise to Triller's affirmative defense of novation.  In fact, the entire Purchase Agreement was conditioned on Legacy delivering "[e]vidence of the forgiveness or assignment of the obligations of the Company in respect of the indebtedness and other accounts payable set forth on Schedule 1.5(a)(vii)," which describes the Note Assignment.  (Purchase Agreement [#8-1] at 4–5, 19.)

Carnegie did not provide the Court with the Purchase Agreement or Note Assignment with its Complaint.  But, again, the Court may consider documents that are referenced in the plaintiff's complaint and are central to the claims at issue, even if they are not attached to the pleadings.  *See Lone Star Fund*, 594 F.3d at 387.  By attaching these referenced documents to a motion to dismiss, a defendant "assists . . . the court in making the elementary determination of whether a claim has been stated."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

Triller attaches the Purchase Agreement and Note Assignment to its motion to dismiss for the Court's consideration in evaluating the plausibility of Carnegie's breach of contract claims, and these documents are referenced in Carnegie's Complaint or the documents attached thereto. They are also central to the question of whether Triller breached its obligations under the Services Agreement and Promissory Note in failing to pay for Carnegie's services. Therefore, the Court should consider these documents in ruling on Triller's motion.

### ii. Triller has not, however, established that the Note Assignment constituted a novation as a matter of law.

The elements of a novation under Texas and California law are essentially the same. To establish a novation, the party raising the defense must prove: (1) the existence of a previous, valid obligation; (2) a mutual agreement of the parties to a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract. *RM Crowe Prop. Servs. Co., L.P. v. Strategic Energy, L.L.C.*, 348 S.W.3d 444, 448 (Tex. App.—Dallas, no pet.) (*citing Vickery v. Vickery*, 999 S.W.2d 342, 356 (Tex. 1999)); *Harper v. Charter Commc'ns, LLC*, No. 2:19-CV-00902-WBS-DMC, 2019 WL 3683706, at *6 (E.D. Cal. Aug. 6, 2019) (citing *Young v. Benton*, 21 Cal. App. 382, 384 (3d Dist. 1913)). Where a novation occurs, only the new agreement may be enforced. *Honeycutt v. Billingsley*, 992 S.W.2d 570, 576 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

Not every assignment constitutes a novation. *See In re Trejos*, 374 B.R. 210, 217 (9th Cir. B.A.P. 2007) ("An assignment by its very nature substitutes one entity for another as a holder of rights. To hold that this substitution in and of itself constitutes a novation would be to hold that every assignment constitutes a novation of the underlying contract."). The critical distinction between assignment and novation is the intent to completely release the original obligor of its obligations under the original contract. Both Texas and California law on novation

emphasize this requirement. *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 347 (Tex. 2006); *Grand Ave. Partners, L.P. v. Goodan*, 25 F. Supp. 2d 1064, 1068 (C.D. Cal. 1996), *aff'd*, 160 F.3d 580 (9th Cir. 1988).

"Generally speaking, a party cannot escape its obligations under a contract merely by assigning the contract to a third party." *Seagull Energy E & P*, 207 S.W.3d at 346–47. "Thus, as a general rule, a party who assigns its contractual rights and duties to a third party remains liable unless expressly or impliedly released by the other party to the contract." *Id.* at 347. Similarly, under California law, to establish a complete release of the original obligor, it must "clearly appear" that the parties "intended to extinguish rather than merely modify the original agreement." *Grand Ave. Partners*, 25 F. Supp. 2d at 1068 (internal citation and quotation omitted). *See also Quicksilver Res., Inc. v. Eagle Drilling, L.L.C.*, No. CIV.A. H-08-868, 2009 WL 1312598, at *8 (S.D. Tex. May 9, 2009) ("It is stated as a general rule that 'a party to a contract may not, unless authorized by the other party, either in the contract itself of otherwise, so assign the contract as to escape liability for the performance of the acts or duties imposed upon him by its terms,' but the assignor remains liable to the other party for the proper performance by his assignee.") (quoting *Walker v. Mills*, 78 P.2d 697, 699 (Okla. 1938) (quoting American Jurisprudence and Corpus Juris Secundum)).

Carnegie argues that neither the Note Assignment nor the Purchase Agreement contains an express release of Triller's obligations under the original Promissory Note. Carnegie also argues that an intent to release Triller from liability on the Note cannot be inferred from these contracts. The undersigned agrees and finds that Triller has not established as a matter of law that the Note Assignment is anything more than an assignment at this stage of the proceedings and on the limited record before the Court.

The documents at issue—the Purchase Agreement, the Promissory Note, and the Note Assignment—were all prepared and executed concurrently as components of one singular transaction related to the transfer of ownership of Triller to Legacy.[1]  Through this transaction, Legacy "assume[d] all intercompany payables owed by Triller to Technologies, LLC" and "[a]ll outstanding intercompany debt under the Carnegie Services Agreement . . . , together with all accrued, unpaid interest thereon . . . , [was] assigned to Legacy . . . pursuant to that certain Assignment of Note by and between Legacy and Triller ('the ***Note Assignment***')."  (*Id.* at 17, 19.)   The Agreement defines the "total outstanding intercompany debt under the Carnegie Services Agreement" as the Promissory Note made by Triller in favor of Carnegie in the principal amount of $4,280,109.  (*Id.* at 20.)

The Note Assignment was executed between Triller and Legacy to transfer the intercompany debt evidenced by the Promissory Note.  (Note Assignment [#8-2] at 2.)  The Assignment "assign[ed], transfer[red], and convey[ed] the note in its entirety" to Legacy, and Legacy "assume[d] all rights, obligations, liabilities, and duties of [Triller] arising with respect to the Note."  (*Id.*)  Legacy specifically agreed "to perform any and all unperformed obligation of Assignor under and pursuant to the Note (including, without limitation, the obligation to pay all interest accruing on the outstanding balance of the Intercompany Debt after the Effective Date)."  (*Id.*)

---

[1] Through the Purchase Agreement, (i) Triller's original shareholders formed a new company, Legacy, and transferred all Triller shares to Legacy; (ii) Legacy transferred all Triller shares to a new holding company, Triller Hold Co. LLC ("HoldCo"); (iii) Triller Acquisition injected tens of millions of dollars into Triller in exchange for majority ownership of HoldCo (and thus effectively in Triller); and (iv) Legacy, owned 100% by all Triller's original shareholders, now holds only 20% of the shares in HoldCo (and thus effectively in the newly capitalized Triller).  (Purchase Agreement [#8-1] at 2.)

It is without question that the Note Assignment assigned Triller's obligations under the contract to Legacy, making Legacy a party liable for the intercompany debts between Triller and Carnegie.  But the Note Assignment does not anywhere discharge or release Triller of its contractual obligations.  It is true that the Purchase Agreement references the "forgiveness" of the obligations of Triller with respect to the intercompany debt at issue, but there is still no language in the Note Assignment itself that "clearly" evidences an intent to extinguish the original Note, rather than merely modify the original agreement by assigning the debt to Legacy. *See Grand Ave. Partners*, 25 F. Supp. 2d at 1068.

Triller makes much of the fact that Carnegie's Chief Executive Officer Paul Posner acknowledged and agreed to the assignment by signing the Note Assignment.[2]  (Note Assignment [#8-2] at 5.)  Although an assignment is enforceable even absent the assent of the original oblige, *see* Assignment, 30 Williston on Contracts § 76:8 (4th ed.), Triller has not established that the acknowledgement of an assignment by that same obligee in turn automatically transforms the assignment into a novation.  There may be other evidence external to the contracts before the Court that establish the requisite intent to extinguish the original Promissory Note and completely release Triller's obligations under it, but the record before the Court is insufficient to prove Triller's defense of novation as a matter of law.  Nothing in this report and recommendation prevents Triller from moving for summary judgment on its affirmative defense or pursuing the defense at trial.

---

[2]  The Purchase Agreement and Note Assignment demonstrate that Mr. Posner acted as Chief Executive Officer of not just Carnegie, but also Legacy and Denali Digital Media, another affiliate of Carnegie that held a controlling interest in Triller and now holds a controlling interest in Legacy.  (Purchase Agreement [#8-1] at 13–14; Note Assignment [#8-2] at 5.)  A California Secretary of State document attached to Triller's motion to dismiss indicates that Denali Digital Media is managed by Carnegie Technologies.  (LLC State Doc. [#8-3] at 2.)  This Court may take judicial notice of matters of public record.  Fed. R. Evid. 201; *DTND Sierra Investments LLC v. Bank of New York Mellon Tr. Co.*, 958 F. Supp. 2d 738, 744 (W.D. Tex. 2013).

## IV.  Conclusion and Recommendation

Having considered Defendant's motion, the response and reply thereto, the relevant contracts, and the governing law, the undersigned recommends that Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [#8] be **DENIED**.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415,

1428–29 (5th Cir. 1996) (en banc).

SIGNED this 5th day of October, 2020.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE