IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CARNEGIE TECHNOLOGIES, LLC, PLAINTIFF; | § § § § § § § § § § § | SA-20-CV-00271-FB |
| *Plaintiff,* | | |
| vs. | | |
| TRILLER, INC., DEFENDANT; | | |
| *Defendant.* | | |

**ORDER**

Before the Court in the above-styled cause of action is Defendant Triller, Inc.'s Motion to Compel Arbitration [#34]. All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#18]. The undersigned has authority to enter an order on Defendant's motion to compel arbitration pursuant to 28 U.S.C. § 636(b)(1)(A). In issuing this Order, the undersigned has also considered Plaintiff's Response to the Motion to Compel Arbitration [#38]. For the reasons set forth below, the Court will **deny** Defendant's motion.

**I. Background**

This case is a breach of contract action between Plaintiff Carnegie Technologies, LLC ("Carnegie") and its affiliate, Defendant Triller, Inc. ("Triller"). Triller is the owner of certain music and social media applications. Carnegie's Original Complaint alleges that it provided Triller certain administrative services pursuant to an Administrative Services Agreement dated December 1, 2017, but that Triller was unable to pay for the services. (Compl. [#1] at ¶ 5.) The Complaint alleges that Triller was purchased by a third party in 2019, and the parties executed an Amended and Restated Administrative Services Agreement on September 19, 2019. (*Id.* at ¶ 6.)

1

A copy of this Agreement is attached to the Complaint in this case. (Services Agreement [#1] at 8–25.)

On October 8, 2019, the closing date of the sale of Triller, Triller signed a Promissory Note payable to Carnegie in the amount of $4,280,109. (Compl. [#1] at ¶ 7.) The Note is also attached to the Complaint. (Promissory Note [#1] at 27–29.) Carnegie alleges that after the sale closed, it continued to pay obligations on behalf of Triller, such as payroll allocations, and to provide services under the parties' agreement, but that Triller failed to pay these invoices. (Compl. [#1] at ¶ 8.) Copies of the alleged unpaid invoices are attached to the Complaint. (Invoices [#1] at 31–33.) Carnegie contends that it made a written demand to Triller for payment of the past-due invoices in an amount of $339,284.53 on January 10, 2020, and gave Triller 30 days to make payment. (Compl. [#1] at ¶ 10.) According to Carnegie, no payment has been received; Triller is in default; and Carnegie has accelerated payment of the unpaid principal amount and interest due under the Promissory Note. (*Id.* at ¶ 11.)

Carnegie filed this suit on March 5, 2020, to recover the amounts due under the Services Agreement and Promissory Note. The Complaint asserts causes of action for breach of the parties' Services Agreement and Promissory Note. (*Id.* at ¶¶ 13–18.) Soon after the suit was filed, Triller moved to dismiss Carnegie's Complaint for failure to state a claim pursuant to Rule 12(b)(6) based on the affirmative defense of novation. In the motion, Triller argued that documents incorporated by reference into the Promissory Note attached to Carnegie's Complaint establish as a matter of law that Triller's debt was transferred and assigned to a subsidiary of a sister company of Carnegie, Triller Legacy (hereinafter "Legacy"), and that this assignment constitutes a novation extinguishing any contractual obligation of Triller under the Promissory Note. The Court denied the motion, concluding that Triller had not established its affirmative

defense as a matter of law on the face of the agreements before the Court because the assignment did not specifically discharge or release Triller of its contractual obligations.

Carnegie has now moved for summary judgment, arguing that, because the Court rejected Triller's defense of novation, Carnegie is entitled to judgment as a matter of law and is entitled to damages under the Services Agreement and the Note. In response to the motion, Triller filed the motion to compel arbitration currently before the Court, arguing that the parties executed multiple written agreements in connection with the Triller sale, and these other agreements (but not the Services Agreement or the Note) contain arbitration provisions that apply to the parties' dispute in this case. Triller asks the Court to stay this case pending the resolution of the arbitration. In its response to the motion for summary judgment, Triller requests a continuance of the motion for summary judgment, arguing that it is premature, in light of the minimal discovery that has taken place in this case, and reasserts its novation defense.

This Order addresses Triller's motion to compel arbitration only.[1] The pending motion for summary judgment, which is a dispositive motion, will be addressed by a separate report and recommendation to the District Court.

---

[1] The Fifth Circuit has not specifically decided whether motions to compel arbitration are dispositive for purposes of 28 U.S.C. § 636(b)(1). *See Lee v. Plantation of La., L.L.C.*, 454 Fed. App'x 358, 360 n.3 (5th Cir. 2011) ("Because we conclude jurisdiction is lacking, we need not reach the question of whether a motion to compel arbitration is a dispositive or non-dispositive motion for purposes of the standard of review by the district judge of the magistrate judge's order."). But the Circuit Courts that have addressed the question have concluded that motions to compel arbitration are not dispositive, so long as they do not result in dismissal of any claims and instead stay the litigation during the arbitral process. *See Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 Fed. App'x 131, 133–34 (3d Cir. 2014) ("A ruling on a motion to compel arbitration does not dispose of the case, or any claim or defense found therein. Instead, orders granting this type of motion merely suspend the litigation while orders denying it continue the underlying litigation."); *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010) (holding that a motion to compel arbitration is not dispositive because a district court retains authority to dissolve stay or review arbitration award). Most district courts in the Fifth Circuit agree. *See, e.g., Adams v. Energy Transfer Partners*, No. 2:16-CV-400, 2017 WL 2347425, at

## II.  Legal Standard

Triller brings its motion to compel arbitration pursuant to the Texas General Arbitration Act, Tex. Civ. Prac. & Rem. Code § 171.021, *et seq.*, and invokes multiple contracts that it alleges were executed in conjunction with the Triller sale that require the parties to arbitrate this dispute.  As this case arises under the Court's diversity jurisdiction, state law governs Carnegie Tech's breach-of-contract claim.  *See Hermann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79–80 (1938)).  The parties' primary dispute in this case involves Triller's alleged breach of its obligations under the Amended Services Agreements and Promissory Note.  The Court has already determined that Texas law governs the construction of those agreements.  (*See* Report & Recommendation [#29] at 4.)

It is undisputed that the primary contract between the parties does not contain an arbitration agreement.  In moving to compel arbitration, Triller invokes other contracts executed on October 8, 2019, the closing date of Triller's sale: (1) the Contribution and Purchase Agreement ("C&P Agreement") and (2) the Limited Liability Company Agreement of Triller Hold Co LLC ("the Operating Agreement").  These contracts are attached to Triller's motion to compel.  (*See* C&P Agreement [#34-1] at 4–75; Operating Agreement [#34-2] at 77–149.)  The C&P Agreement contains a general choice-of-law provision selecting Delaware law as governing the validity and construction of the agreement (*see* [#34-1] at 34, § 8.11), and the Operating Agreement contains both a general choice-of-law provision and a specific provision invoking the

---

*1 (S.D. Tex. May 30, 2017) (concluding that motion to compel is properly classified as a non-dispositive matter); *Tige Boats, Inc. v. Interplastic Corp.*, No. 1:15-CV-0114-P-BL, 2015 WL 9268423, at *1–3 (N.D. Tex. Dec. 21, 2015) (holding that the magistrate judge's ruling compelling arbitration was non-dispositive where the ruling stayed the case rather than dismissed the case pending arbitration).

Delaware Uniform Arbitration Act, Del. Code Ann. Tit. 10, § 5701, to govern the parties' dispute resolution provisions, including the arbitration agreement (*see* [#34-1] at 123–24, §§ 12.14, 12.22(b).)

Therefore, as Carnegie points out in its response to the motion to compel arbitration, there are three possible arbitration acts that could govern the question of whether the Court should compel the parties to arbitrate here. (Resp. [#38] at 5 n.3.) The Federal Arbitration Act ("FAA") governs contracts involving interstate commerce, like the one at issue here. 9 U.S.C. §§ 1–2. Triller, however, invokes the Texas General Arbitration Act as the basis for its motion to compel, as Texas law governs the primary contract underlying this dispute. Yet the agreements containing the arbitration agreements invoke Delaware law and that state's arbitration act.

The FAA does not preempt state arbitration rules, so long as state rules do not undermine the goals and policies of the FAA. *Volt Info. Sciences, Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989). There is a strong presumption in both Texas and Delaware public policy favoring arbitration and upholding parties' intentions to arbitrate a dispute, "which is similar to the federal policy of ensuring the enforceability, according to their terms, of private agreements to arbitrate." *ASW Allstate Painting & Const. Co., Inc. v. Lexington Ins. Co.*, 188 F.3d 307, 310 (5th Cir. 1999) (discussing Texas General Arbitration Act); *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 911 (Del. 1989). The Fifth Circuit has held that "the Texas General Arbitration Act . . . can govern the scope of an arbitration agreement without undermining the federal policy underlying the FAA." *ASW Allstate Painting & Const. Co.*, 188 F.3d at 310. Yet the Fifth Circuit has made clear that contractual language opting out of the FAA must be "clear and unambiguous," and broad choice-of-law provisions, like the one in the

5

C&P Agreement, are insufficient to express the intent to opt out of the FAA with respect to dispute resolution provisions. *Action Indus., Inc. v. U.S. Fidelity & Guar. Co.*, 358 F.3d 337, 341 (5th Cir. 2004).

Ultimately, the Court need not decide which law governs here, as the resolution of Triller's motion would be the same under any of the three acts. Under the FAA, courts apply a two-step inquiry in determining whether the parties have agreed to arbitrate a claim. "The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). Due to the "liberal federal policy favoring arbitration," there is a presumption in favor of enforcing contractual arbitration agreements. *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 473 (5th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). The party moving to compel arbitration bears the initial burden of proving the existence of a valid agreement to arbitrate. *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). Once the moving party has met its initial burden, the burden shifts to the party resisting arbitration to assert a reason that the arbitration agreement is unenforceable. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

The Texas General Arbitration Act requires a court to engage in this same two-step inquiry. *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 791 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see also* Tex. Civ. Prac. & Rem. Code § 171.021(a). Texas also recognizes a presumption in favor of agreements to arbitrate, but the party seeking to compel arbitration still bears the initial burden of establishing a valid, enforceable arbitration agreement. *TMI, Inc.*, 225 S.W.3d

at 791.  But once a valid agreement is identified, the same burden shifting framework applies as under the FAA.  *ASW Allstate Painting & Const. Co.*, 188 F.3d at 311 (citing *Certain Underwriters at Lloyd's of London v. Celebrity, Inc.*, 950 S.W.2d 375, 378 (Tex. App.—Tyler 1996, writ dism'd w.o.j.)).

Similarly, under the Delaware Arbitration Act, the only issues before the court in deciding a motion to compel arbitration are (1) whether an agreement to arbitrate exists; (2) whether the parties have a duty to arbitrate under the agreement; and (3) whether the party refusing to arbitrate has breached this duty.  *Pettinaro Const. Co., Inc. v. Harry C. Partridge, Jr. & Sons, Inc.*, 408 A.2d 957, 962 (Del. Ch. 1979).  Under all three acts, courts are directed to apply general state law contract principles in determining the validity of the identified contract.  *Volt Info. Scis.*, 489 U.S. at 475; *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *Orner v. Country Grove Inv. Grp., LLC*, No. CIV.A. 2245-VCS, 2007 WL 3051152, at *6 (Del. Ch. Oct. 12, 2007).  It is undisputed that both of the contracts invoked by Triller in its motion to compel are to be construed under Delaware law, regardless of whether the FAA or the Texas or Delaware Arbitration Acts governs the question of whether this Court should compel arbitration.

### III.  Analysis

Triller has not satisfied its burden to demonstrate that a valid and enforceable arbitration agreement exists that binds the parties to arbitrate this dispute.  Triller's motion to compel arbitration is based on dispute resolution provisions in the C&P and Operating Agreements executed as part of the Triller sale.  Neither the C&P Agreement or the Operating Agreement was signed by Carnegie or Triller.  The contracts executed between Carnegie and Triller (the Services Agreement and Promissory Note) do not contain arbitration provisions.  Even if these

contracts were executed as part of the same broader transaction as the C&P Agreement and the Operating Agreement, Triller has not established that the parties to this suit intended and agreed to arbitrate this breach-of-contract claim.

A key element of a valid contract is mutual assent, which is generally evidenced by the parties' signatures on the contract. *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1229–30 (Del. 2018). "Under Delaware law, overt manifestation of assent—not subjective intent—controls the formation of contract." *Id.* at 1229 (internal citations and quotations omitted). A signed writing "generally offers the most powerful and persuasive evidence of the parties' intent to be bound." *Id.* at 1230. The same is true in construing Texas contracts.[2] *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) ("Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind."). Because Carnegie and Triller are not signatories to the C&P and Operating Agreements, there must be other evidence of their mutual assent to be bound by the arbitration provisions in these two agreements. Triller has failed to supply the Court with this evidence, and the plain language of the contracts at issue do not support Triller's position.

The three contracts at issue—the C&P Agreement, the Operating Agreement, and the Services Agreement—each contain different forum selection and dispute resolution clauses, evidencing an intent by the parties to each of those contracts that specific disputes are to be resolved in specific forums and using specific procedures. The C&P Agreement was executed between four parties to consummate the sale of Triller through restructuring the company: (1) Triller Acquisition, LLC; (2) Triller Hold Co LLC; (3) Legacy; and (4) Denali Digital Media,

---

[2] The Court will continue to cite both Delaware and Texas law as the relevant bodies of law supplying the relevant principles of contract construction, as the Services Agreement and Promissory Note are governed by Texas law and the C&P and Operating Agreements are governed by Delaware law.

LLC ("Denali Digital").  Before the sale, Denali Digital was the primary equity holder of Triller; following the restructuring transaction, Triller became wholly owned by Legacy.  (C&P Agreement [#34-1] at 4.)  Section 8.12 of the C&P Agreement provides:

> Dispute Resolution.  Any claim, demand, disagreement or dispute that arises regarding, from or in connection with this Agreement or the breach or alleged breach or termination thereof . . . between or among the Parties shall be resolved in accordance with the following dispute resolution procedures:
> . . .
> (b) <u>Arbitration</u>.  In the event that the Dispute is not resolved pursuant to the procedures described in Section 8.12(a), any Party may request that the Dispute be submitted to binding arbitration . . . .

(C&P Agreement [#34-1] at 34, § 8.12.)  As previously noted, this agreement contains a choice-of-law provision designating Delaware law as governing any disputes arising under the agreement.  (*Id.* at 34, § 8.11.)

The Operating Agreement is the Limited Liability Company Agreement of Triller Hold Co. and was entered into between three parties to form the company for the purpose of holding Triller shares and other Triller assets: (1) Triller Acquisition; (2) Legacy; and (3) Mashtraxx (Triller Holding) Limited.  (Operating Agreement [#34-1] at 88, § 2.7; *id.* at 130.)  Section 12.22 of the Operating Agreement provides:

> [A]ny dispute concerning the construction, validity, interpretation, enforceability or breach of this Agreement, shall be resolved exclusively through binding arbitration . . . held in Century City, Los Angeles, California . . . .

(*Id.* at 124, § 12.22(a).)  As previously noted, this contract also contains a choice-of-law provision selecting Delaware law as governing any disputes arising under the agreement.  (*Id.* at 123, § 12.14.)

Neither the Services Agreement nor the Promissory Note contain such a provision.  The Amended Services Agreement executed between Carnegie and Triller provides for Carnegie's

9

continued performance of the services originally contracted between the parties and was executed in anticipation of the sale of a majority interest in Triller to a third party. (Services Agreement [#34-1] at 165.) The contract contains a forum selection clause that provides:

> Consent to Jurisdiction; Forum Selection; Waiver of Jury Trial. The parties hereto agree that any actions or proceedings arising in connection with this Agreement shall be tried and litigated exclusively in the state or federal courts located in San Antonio, Texas. The aforementioned choice of venue is intended by the parties to be mandatory and not permissive in nature, thereby precluding the possibility of litigation between the parties with respect to or arising out of this Agreement in any jurisdiction other than those specified in this Section 7.11. Each party hereby waives any right it may have to assert the doctrine of forum non conveniens or similar doctrine to object to venue with respect to any proceeding brought in accordance with this Section 7.11 and stipulates that the state or federal courts located in San Antonio, Texas shall have personal jurisdiction over each of them for the purpose of litigating any dispute, controversy or proceeding arising out of or related to this Agreement. . . . .

(*Id.* at 172, § 7.11.) As previously mentioned, this Agreement specifies that any disputes arising thereunder shall be governed by Texas law. (*Id.* at 172, § 7.10.) This contract demonstrates that the parties unequivocally intended that their disputes arising out of this agreement be resolved in a judicial forum, specifically in Texas state or federal courts. The Promissory Note, which is to "evidence debt for services rendered under original and Amended Services Agreements," does not contain an arbitration provision and does not specify what law shall govern in the event of a dispute. (Promissory Note [#34-1] at ¶ 5.)

Despite the clear language in the agreement underlying this breach-of-contract action, Triller argues that Carnegie's claims arise in connection with the Triller sale and therefore the C&P and Operating Agreements—the agreements that Triller maintains generally govern the Triller sale and all related disputes—govern this action. Yet Triller cites to no authority for this proposition. And the plain language of the arbitration provisions in the C&P Agreement and the Operating Agreement limit the provisions to disputes arising from and in connection with those

10

two agreements and between or among the parties to those agreements. (*See* C&P Agreement [#34-1] at 34, § 8.12; Operating Agreement [#34-1] at 124, § 12.22(a).)  Carnegie and Triller were not parties to those agreements.  And the contract they signed and executed and that Triller allegedly breached specifies a Texas judicial forum.

Triller advances only one argument in its motion as a basis for this Court disregarding the clear language in the parties' Services Agreement selecting a Texas forum, and this argument is prudential rather than rooted in any principles of contract interpretation.  Triller argues that because there is currently an arbitration pending that relates to this lawsuit and the Triller sale there is a risk of inconsistent rulings if this case is allowed to proceed in this forum and is not consolidated with the arbitration.[3]  These concerns do not vitiate the legal requirement that there be mutual assent to the arbitral forum among the parties at issue for this Court to compel arbitration.

Both parties make various arguments in their filings about the pending arbitration—who initiated it, how long it has been pending, and whether it preceded this litigation or was a reaction to it.  There are also assertions in the filings regarding previous attempts to involve Carnegie in the arbitration that allegedly failed due to the fact that Carnegie is not a party to the two arbitration agreements cited by Triller in this motion.  Yet none of these arguments are presented to the Court in any sort of form that could constitute evidence that might bear one way or the other on the pending motion to compel.  In any event, it is unlikely that these details related to the procedural history of the various interrelated disputes connected to Triller and its sale would provide evidence of the mutual assent of Carnegie and Triller to the arbitral forum

---

[3] For example, Triller argues that HoldCo initiated the pending arbitration and may be entitled to an offset against any monies that may be owed to Carnegie under the Services Agreement and/or Promissory Note.

and somehow override the clear language in the Services Agreement choosing a Texas judicial forum for the resolution of disputes between the parties to this litigation.

Finally, there are certain principles of contract and agency law that might allow nonsignatories to be bound to a contract, including its arbitration clause, such as where the nonsignatory is the intended third-party beneficiary of the contract or based on theories of incorporation by reference, assumption, and estoppel.  *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643–44 (Tex. 2009); *NAMA Holdings, LLC v. Related World Market Ctr., LLC*, 922 A.2d 417, 430–31 & n.26 (Del. Ch. 2007).  Yet, Triller argues none of these theories to the Court in advancing its motion, and it is not this Court's duty to address them *sua sponte* here.

In summary, because Triller has failed to come forth with a valid and enforceable arbitration agreement binding the parties to this litigation, its motion to compel arbitration should be denied.  Having considered Triller's motion, Carnegie's response, the relevant contracts, and the governing law,

**IT IS HEREBY ORDERED** that Defendant Triller, Inc.'s Motion to Compel Arbitration [#34] is **DENIED**.

SIGNED this 5th day of March, 2021.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE