IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CARNEGIE TECHNOLOGIES, LLC, | § § § | |
| *Plaintiff*, | § § | SA-20-CV-00271-FB |
| vs. | § § § | |
| TRILLER, INC., | § § § | |
| *Defendant*. | § § | |

**ORDER**

Before the Court in the above-styled cause of action is Defendant's Motion to Compel Responses to Requests for Production of Documents [#46]. All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#18]. The undersigned has authority to enter an order on Defendant's motion to compel arbitration pursuant to 28 U.S.C. § 636(b)(1)(A).

The Court held a hearing on the motion on March 19, 2021, at which both parties appeared telephonically through counsel. Having considered the motion, Plaintiff's response [#47], Defendant's reply [#50], the parties' joint advisory [#54], and the arguments of counsel at the hearing, the Court will **deny** the motion.

**I. Background**

This case is a breach of contract action between Plaintiff Carnegie Technologies, LLC ("Carnegie") and its affiliate, Defendant Triller, Inc. ("Triller"). Triller is the owner of certain music and social media applications. Carnegie's Original Complaint alleges that it provided Triller certain administrative services pursuant to an Administrative Services Agreement dated December 1, 2017, but that Triller was unable to pay for the services. (Compl. [#1] at ¶ 5.) The

1

Complaint alleges that Triller was purchased by a third party in 2019, and the parties executed an Amended and Restated Administrative Services Agreement on September 19, 2019. (*Id.* at ¶ 6.)

On October 8, 2019, the closing date of the sale of Triller, Triller signed a Promissory Note payable to Carnegie in the amount of $4,280,109. (Compl. [#1] at ¶ 7.) Carnegie alleges that after the sale closed, it continued to pay obligations on behalf of Triller, such as payroll allocations, and to provide services under the parties' agreement, but Triller failed to pay these invoices. (Compl. [#1] at ¶ 8.) Carnegie contends that it made a written demand to Triller for payment of the past-due invoices in an amount of $339,284.53 on January 10, 2020, and gave Triller 30 days to make payment. (Compl. [#1] at ¶ 10.) According to Carnegie, no payment has been received; Triller is in default; and Carnegie has accelerated payment of the unpaid principal amount and interest due under the Promissory Note. (*Id.* at ¶ 11.)

Carnegie filed this suit on March 5, 2020, to recover the amounts due under the Services Agreement and Promissory Note. The Complaint asserts causes of action for breach of the parties' Services Agreement and Promissory Note. (*Id.* at ¶¶ 13–18.) Soon after the suit was filed, Triller moved to dismiss Carnegie's Complaint for failure to state a claim pursuant to Rule 12(b)(6) based on the affirmative defense of novation. In the motion, Triller argued that documents incorporated by reference into the Promissory Note attached to Carnegie's Complaint establish as a matter of law that Triller's debt was transferred and assigned to a subsidiary of a sister company of Carnegie, Triller Legacy (hereinafter "Legacy"), and that this assignment constitutes a novation extinguishing any contractual obligation of Triller under the Promissory Note. The Court denied the motion, concluding that Triller had not established its affirmative defense as a matter of law on the face of the agreements before the Court because the assignment did not specifically discharge or release Triller of its contractual obligations.

Carnegie has moved for summary judgment, arguing that because the Court rejected Triller's defense of novation, Carnegie is entitled to judgment as a matter of law and is entitled to damages under the Services Agreement and the Note. In its response to the motion for summary judgment, Triller requests a continuance of the motion for summary judgment, arguing that it is premature in light of the minimal discovery that has taken place in this case, and reasserts its novation defense.

Triller also filed a motion to compel arbitration, arguing that the parties executed multiple written agreements in connection with the Triller sale, and these other agreements (but not the Services Agreement or the Note) contain arbitration provisions that apply to the parties' dispute in this case. Triller asked the Court to stay this case pending the resolution of the arbitration. The Court denied the motion to compel arbitration, finding that Triller failed to satisfy its burden to demonstrate that a valid and enforceable arbitration agreement exists that binds the parties to arbitrate this dispute.

Carnegie's motion for summary judgment remains pending. Triller has now filed a motion to compel discovery responses, arguing that Carnegie has withheld discovery that could help prove its novation defense and defeat the motion for summary judgment. The Court will deny the motion to compel.

## II. Analysis

A party seeking discovery may move for an order compelling the production of documents requested. Fed. R. Civ. P. 37(a)(3)(B)(iv). The Federal Rules of Civil Procedure limit discovery to any nonprivileged matter relevant to any party's claim or defense that is proportional to the needs of the case. *Id.* at 26(b)(1). This Court may only compel the production of materials and information subject to discovery under Rule 26. A party resisting

discovery must show specifically how each discovery request is irrelevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

At the time of the Court's discovery hearing, there were two outstanding discovery requests in dispute. Triller asks the Court to issue an order compelling Carnegie to produce documents responsive to the following two requests:

- All DOCUMENTS and COMMUNICATIONS between Mr. Posner, Mr. Butta, Mr. Williams, and/or any of their representatives RELATING TO the negotiation and execution of the promissory note dated October 8, 2019 between Carnegie Technologies, LLC and Triller, Inc.

- All DOCUMENTS and COMMUNICATIONS between Mr. Posner, Mr. Butta, Mr. Williams, and/or any of their representatives RELATING TO the negotiation and execution of the assignment agreement dated October 8, 2019 between Carnegie Technologies, LLC, Triller Legacy, LLC, and Triller, Inc.

(Joint Advisory [#54] at 1–2.) Triller believes documents responsive to these requests could establish the parties' intent to not only assign the Promissory Note to Legacy but also to discharge or release Triller from all of its contractual obligations related to the Note. In other words, Triller believes these requested communications could constitute evidence extrinsic to the contracts executed in connection with Triller's sale (the Purchase Agreement, the Assignment, and the Note) that could prove its defense of novation.

Carnegie is withholding documents in its possession that are responsive to these requests on the basis of the attorney-client privilege. Triller argues that the attorney-client privilege is inapplicable because the crime-fraud exception to the privilege applies and therefore requires production. According to Triller, the parties always intended for the assignment of the Promissory Note to Legacy to relieve Triller of any responsibility for the debt. Triller takes the

position that Carnegie engaged its counsel for the specific purpose of perpetuating a fraud—misrepresenting to Triller that the sale would be "on a debt-free basis" when Carnegie's true intent was to execute an assignment of the Note that continued to hold Triller financially liable for the debt.

Carnegie has attached its privilege log to the parties' advisory [#54-1].  Triller asks the Court to either compel the production of the withheld documents on the basis of the crime-fraud exception or conduct an *in camera* review of the privileged documents.  Carnegie maintains that Triller has not made a *prima facie* showing of fraud or criminal activity to entitle it to an *in camera* review or to require production.

The Court finds that it need not conduct an *in camera* review of the withheld documents and need not evaluate whether the attorney-client privilege was properly asserted by Carnegie. The discovery sought by Triller is for documents and communications between various representatives of Carnegie and its attorneys related to the negotiation and execution of the Assignment and the Note.  Carnegie argues that these internal communications between Carnegie and its counsel as a matter of law cannot establish the requisite intent to extinguish the original Note and completely release Triller's obligations under it.  The Court agrees.

As Carnegie points out in its filings, the Assignment contains an integration clause stating:

> This Assignment (including all recitals and exhibits attached hereto), is the final expression of, and contains the entire agreement between, the parties with respect to the subject matter hereof and supersedes all prior understandings with respect thereto.

(Assignment [#33-4] at 3.)  When pressed at the hearing, Triller conceded that the only documents it seeks from Carnegie are e-mail communications related to the execution of the Assignment and Note.  Triller does not argue that Carnegie is withholding additional contracts

executed by the parties that consummated an agreement to fully release Triller from liability under the Note. In light of the integration clause, Triller could not have reasonably or justifiably relied on any representations not contained in the Assignment itself. Any such representations, even if they exist in the requested communications, would not alter the Court's interpretation of the contract in evaluating the merits of Triller's novation defense.

Triller's argument is essentially that during negotiations prior to the execution of the Assignment, Carnegie made representations that the Assignment of the Note to Legacy was to have the effect of a novation—the complete release of all liability of Triller on the Note. Triller argued at the hearing that, on the day before the contract was executed, Carnegie inserted the Assignment and essentially changed the terms of the parties' prior agreement that Triller's sale was to be a debt-free transaction for Triller. This, Triller, argues was fraud.

To establish fraud, a plaintiff must show that: (1) the defendant made a false, material representation; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff justifiably relied on the representation, which caused the plaintiff injury. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (citing *Ernst & Young, L.L.P v. Pac. Mut. Life Ins.*, 51 S.W.3d 573, 577 (Tex. 2001)). "A representation is material if the representation was important to the plaintiff in making a decision, such that a reasonable person would be induced to act on and attach importance to the representation in making the decision." *Barrow-Shaver Resources Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019) (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011)). To establish the fourth element, "the plaintiff must show that it actually relied on the defendant's

representation and, also, that such reliance was justifiable." *Orca Assets*, 546 S.W.3d at 653 (internal citation omitted).

The Texas Supreme Court has expressly declined to adopt a *per se* rule that a disclaimer of reliance, such as the integration clause in the parties' contract here, automatically precludes a fraudulent-inducement claim. *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). Courts must examine the contract itself and the totality of the circumstances in determining if a waiver-of-reliance provision is binding. *Forest Oil*, 268 S.W.3d at 60. These factors include whether the contract was negotiated or boilerplate, whether the complaining party was represented by counsel, whether the parties dealt with each other at arm's length, whether the parties were knowledgeable in business matters, and whether the release language was clear. *Forest Oil*, 268 S.W.3d at 60; *see Schlumberger*, 959 S.W.2d at 179–81.

Applying these factors to the Assignment contract and its integration clause, any reliance by Triller on prior representations of Carnegie was not justifiable. The contracts at issue were not boilerplate; the parties are sophisticated business entities that were represented by counsel during contract negotiations; the contracts were executed by way of an arm's length transaction; and the language of the integration clause is unequivocal that the terms of the contract supersede all prior understandings between the parties. *See Orca Assets*, 546 S.W.3d at 658 ("A party to an arm's length transaction must exercise ordinary care and reasonable diligence for the protection of his own interests . . . ."). Texas courts have long recognized that "a party to a written contract cannot justifiably rely on oral misrepresentations regarding [a] contract's unambiguous terms." *Barrow-Shaver Resources Co.*, 590 S.W.3d at 498 (quoting *Orca Assets*, 546 S.W.3d at 658). Triller cannot prevail on its allegation of fraud because it cannot prove justifiable reliance on

Carnegie's representations prior to the execution of the Assignment about what the terms in that contract mean.

For the same reasons, any communications or documents in Carnegie's possession evidencing prior agreements between the parties to provide Triller with a "debt-free transaction" would not change the Court's interpretation of the parties' contracts in evaluating Triller's novation defense. "The parol evidence rule bars consideration of evidence that contradicts, varies, or adds to the terms of an unambiguous written agreement." *Id.* at 483. "Surrounding facts and circumstances cannot be employed to make the language say what it unambiguously does not say or to show that the parties probably meant, or could have meant, something other than what their agreement stated." *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 757 (Tex. 2018) (internal citations omitted). Triller does not argue that the Assignment is ambiguous or provide the Court with any other basis for going beyond the terms of the parties' written agreements in evaluating whether a novation occurred.

Triller conceded at the Court's hearing that whether the Assignment constituted a novation is the only remaining legal issue before the Court. Because the requested discovery would not be relevant to the Court's analysis of Triller's novation defense, it is not relevant and proportional to the needs of this case, and the Court will deny Triller's motion to compel.

Finally, at the Court's hearing, Triller requested an extension of the discovery deadline by 90 days for it to pursue additional discovery related to its defense of novation. For the reasons already stated, the Court finds that Triller has not identified additional discovery that could lead to evidence that would prove its novation defense, and further discovery into the parties' alleged unwritten intent with respect to the Assignment would not produce evidence the Court could consider in interpreting the contract. The Court will therefore deny the oral request

for an extension of the scheduling order deadlines in this case and consider the pending motion for summary judgment, which will be addressed by separate Order..

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Responses to Requests for Production of Documents [#46] is **DENIED**.

**IT IS FURTHER ORDERED** that Triller's request for an extension of the discovery deadline is **DENIED**.

SIGNED this 31st day of March, 2021.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE