IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CARNEGIE TECHNOLOGIES, LLC, PLAINTIFF, | § § § | |
| Plaintiff, | § § | SA-20-CV-00271-FB |
| vs. | § § | |
| TRILLER, INC., DEFENDANT, | § § § | |
| Defendant. | § § | |

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Plaintiff Carnegie Technologies, LLC's Motion for Summary Judgment [#33] and Defendant's Motion for Leave to File Limited Answer [#60]. All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#18]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). In issuing this report and recommendation, the undersigned has also considered the following responses and replies thereto [#35, #36, #39, #40, #41, #42, #43, #44, #45, #61, #63]. For the reasons set forth below, it is recommended that Plaintiff's Motion for Summary Judgment be **GRANTED** and Defendant's Motion for Leave to File Limited Answer be **DENIED**.

In making this recommendation, the undersigned has also resolved Defendant's evidentiary objections to Plaintiff's summary judgment evidence. The undersigned has authority to enter an order on the objections pursuant to 28 U.S.C. § 636(b)(1)(A).

1

# I.  Procedural Background

This case is a breach of contract action between Plaintiff Carnegie Technologies, LLC ("Carnegie Technologies") and its affiliate, Defendant Triller, Inc. ("Triller").  Carnegie Technologies' Original Complaint alleges that it provided Triller certain administrative services pursuant to an Administrative Services Agreement dated December 1, 2017, but that Triller was unable to pay for the services.  (Compl. [#1] at ¶ 5.)  The Complaint alleges that Triller was purchased by a third party in 2019, and the parties executed an Amended and Restated Administrative Services Agreement on September 9, 2019.  (*Id.* at ¶ 6.)  In connection with the transaction, Triller signed a Promissory Note payable to Carnegie Technologies in the amount of $4,280,109.  (*Id.* at ¶ 7.)

Carnegie Technologies contends that it made a written demand to Triller for payment of the past-due invoices in an amount of $339,284.53 on January 10, 2020, and gave Triller 30 days to make payment.  (*Id.* at ¶ 10.)  According to Carnegie Technologies, no payment has been received; Triller is in default as to the unpaid invoices; and Carnegie Technologies has accelerated payment of the unpaid principal amount and interest due under the Promissory Note. (*Id.* at ¶ 11.)

Carnegie Technologies filed this suit on March 5, 2020, to recover the amounts due under the Services Agreement and Promissory Note.  The Complaint asserts causes of action for breach of the parties' Services Agreement and for suit on the Promissory Note.  (*Id.* at ¶¶ 13–18.)  Soon after the suit was filed, Triller moved to dismiss Carnegie Technologies' Complaint for failure to state a claim pursuant to Rule 12(b)(6) based on the affirmative defense of novation.  In the motion, Triller argued that documents incorporated by reference into the Promissory Note attached to Carnegie Technologies' Complaint establish as a matter of law that Triller's debt was

transferred and assigned to a subsidiary of a sister company of Carnegie Technologies, Triller Legacy, and that this assignment constitutes a novation extinguishing any contractual obligation of Triller under the Promissory Note.  The Court denied the motion, concluding that Triller had not established its affirmative defense as a matter of law on the face of the agreements before the Court because the assignment did not specifically discharge or release Triller of its contractual obligations.

Carnegie Technologies thereafter filed the motion for summary judgment that is the subject of this report and recommendation.  In the motion, Carnegie Technologies argues that it is entitled to judgment as a matter of law and is entitled to damages under the Services Agreement and the Note.

After Carnegie Technologies filed its motion for summary judgment, Triller moved to compel arbitration, arguing that multiple written agreements executed in connection with the Triller sale and these agreements contain arbitration provisions that govern the parties' dispute in this case.  The Court denied the motion, concluding that the contracts that were executed between Carnegie Technologies and Triller (the Services Agreement and Promissory Note) do not contain arbitration provisions and Triller had failed to establish that the parties to this suit intended and agreed to arbitrate the claims at issue in this suit or that the related contracts containing the arbitration provisions required arbitration of Carnegie Technologies' claims.

After the Court denied the motion to compel, Triller filed the motion for leave to file a limited answer, which is also before the Court.  By this motion, Triller asks the Court to extend the deadline to file a limited answer in order to assert the additional affirmative defense of illegality and to formalize Triller's already briefed affirmative defense of novation, as Triller neglected to file an answer in this case.

Both Carnegie Technologies' motion for summary judgment and Triller's motion for leave to file a limited answer are ripe for review.  Carnegie Technologies' motion for summary judgment was filed on November 11, 2020, soon after the Court denied Triller's motion to dismiss based on the defense of novation.  At the time the motion was filed, there were approximately three months left in the discovery period.  Triller's response to the motion argued that the motion was premature because meaningful discovery had yet to take place.

This argument is now moot.  The discovery period has now been closed since February 22, 2021.  (Scheduling Order [#28].)  The day after discovery closed, Triller asked the Court to extend the discovery deadline so that it could obtain certain documents and communications between various parties involved in the negotiation of the Triller 2019 transaction.  (Motion to Compel [#46].)  Triller attempted to convince the Court that these documents could evidence the parties' intent to discharge Triller from its obligations under the Promissory Note, prove its novation defense, and defeat Carnegie's motion for summary judgment.  The Court denied the motion, finding that the internal communications at issue could not establish the requisite intent to extinguish the Note and completely release Triller's obligations under it, as the parties' written agreements were controlling.  (Order [#57].)  The parties have had ample time to complete any relevant discovery and to brief the Court fully on the issues raised in Carnegie's motion for summary judgment.

## II.  Carnegie Technologies' Motion for Summary Judgment

Carnegie Technologies moves for summary judgment on its claim of breach of contract on the parties' Services Agreement and for its suit on the Promissory Note, arguing that it is entitled to judgment as a matter of law against Triller and to damages under both the Agreement and the Note.  The motion should be granted.

4

A.      **Summary Judgment Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. However, if the party moving for summary judgment fails to satisfy its initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

B.      **Objections to Summary Judgment Evidence**

Triller has filed objections to Carnegie Technologies' summary judgment record.  (*See* Objections [#42].)  Triller objects to numerous paragraphs of the Declaration of Karen Leger, the Controller of Carnegie Technologies.  (Leger Decl. [#33-1].)  Triller argues that Ms. Leger lacks foundation or personal knowledge to make the statements contained in her Declaration and that the probative value of her statements is substantially outweighed by the considerations set forth in Rule 403 of the Federal Rules of Evidence—unfair prejudice, confusing the issues, and wasting time.  (Objections [#42].)  Triller's objections are for the most part without merit.

Rule 103 of the Federal Rules of Evidence requires a party objecting to evidence to state the reasons for the objection with specificity.  Fed. R. Evid. 103(a)(1).  Triller's objections fail to do so.  The objections are not in the form of a memorandum containing legal argument regarding Triller's concerns about the various portions of Ms. Leger's Declaration.  Triller merely provides the Court with a chart with quoted excerpts from Ms. Leger's Declaration and a bulleted list of objections with citations to various rules of evidence.  The chart lacks any explanation as to how the cited rule of evidence applies to the declaration excerpt, and the logical connection between the two is far from clear in most instances.

For example, Triller objects to Paragraph 2 of Leger's Declaration for lack of foundation/ knowledge and the risk of undue prejudice.  Paragraph 2 states the following:

> I am the Controller of Carnegie Technologies, LLC ("Carnegie Technologies Technologies").  My duties include overseeing accounts and finances of Carnegie Technologies' affiliates, including Denali Digital Media, LLC ("Denali Digital Media"), and Triller Legacy, LLC ("Triller Legacy").  I am an authorized representative of Carnegie Technologies and, as such, I am authorized to make this declaration on behalf of the company.

(Leger Decl. [#33-1] at ¶ 2.)  This paragraph provides Ms. Leger's title and duties.  Triller does not explain why Ms. Leger would not have personal knowledge of these matters, such that her declaration runs afoul of Federal Rule of Evidence 602.  *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Triller similarly objects to Paragraphs 3 and 4 of the Declaration, in which Ms. Leger describes the relationship between Carnegie Technologies and Triller both before and after the sale of Triller in 2019.  Ms. Leger states that "Denali Digital Media initially acquired . . . Triller in late 2017" and that since the acquisition Carnegie Technologies "has provided administrative services to Triller pursuant to an Administrative Services Agreement dated December 1, 2017." (Leger Decl. [#33-1] at ¶ 3.)  Ms. Leger describes the types of services provided by Carnegie Technologies to Triller and states that "Triller recorded liability on its books for these services but did not have the ability to pay its debt in cash."  (*Id.*)  Ms. Leger goes on to describe the October 2019 sale of Triller in which "a third party acquired majority ownership and control" of the company and the execution of the Amended and Restated Administrative Services Agreement."  (*Id.* at ¶ 4.)  Again, aside from generally asserting that Ms. Leger lacks foundation and personal knowledge and questioning the probative value of these statements, Triller has not provided the Court with any explanation for the basis of these objections.

The objections continue like this, challenging almost every single paragraph of the Leger Declaration, without explanation or apparent legal basis.  The objections even challenge Ms. Leger's authentication of various documents at issue in this case, some of which are attached to Triller's response to Carnegie Technologies' motion for summary judgment, such as the Contribution and Purchase Agreement for the 2019 sale of Triller.  The Court is unclear the

precise basis of Triller's objection that the probative value of these documents is outweighed by the danger of undue prejudice or how Ms. Leger lacks foundation to authenticate these documents, the authenticity of which does not even seem to be at issue.

The objections also contain reference to a "Motion to Set Aside Default and Default Judgment and for Leave to Defend the Action," where there are no such motions pending before the Court or filed at any time in this case.  It is possible that these objections were filed in some other related proceeding involving the parties and that Triller failed to thoroughly edit them for the purpose of their use here.

There are, however, a few narrow objections that the Court will sustain.  In Paragraph 5, Ms. Leger states that "it was clear to all parties to the transaction that the debt accrued by Triller under the Services Agreement would <u>not</u> be forgiven or otherwise extinguished."  (*Id.* at ¶ 5.) Leger does not have personal knowledge of Triller's point of view as to the debt at the time of the 2019 sale.  The Court will disregard this statement in so far as it purports to represent what was clear to anyone other than Ms. Leger or her company in evaluating Carnegie Technologies' summary judgment motion.

Additionally, the Court will disregard certain statements in Paragraphs 7 and 9 of Leger's Declaration that are legal conclusions.  For example, Leger states that '[t]he assignment [of the Promissory Note to Triller Legacy, LLC] did not serve to release Triller from liability under the Note." (*Id.* at ¶ 7.)  She also states that "[f]ailure to pay the amounts due under the invoices was a material breach of the Services Agreement and constituted an Event of Default under the Note."  These are legal conclusions material to Carnegie Technologies' claims for breach of contract and suit on the Promissory Note.  Thus, these are issues for the Court to decide.

The Court will overrule all of Triller's other objections for failure to state them with the specificity required under the Federal Rules of Evidence.

## C.      Summary Judgment Record

Having resolved the evidentiary issues raised by Triller, the summary judgment record establishes the following undisputed facts.  Triller is the owner of certain valuable social media application, referred herein as the Triller App.  (Lu Decl. [#35-1] at ¶ 2.)  Until October 2019, Triller was owned by an investment group that included Carnegie Technologies, Triller Legacy, and others.  (*Id.*)

Carnegie Technologies historically provided administrative services to Triller pursuant to an Administrative Services Agreement dated December 1, 2017.  (Leger Decl. [#33-1] at ¶ 3.) These services included payroll, accounting services, and other management and administrative services.  (*Id.*)  Triller recorded a liability on its books for these services but did not have the ability to pay its debt in cash.  (*Id.*)

In October 2019, a third party—Triller Hold Co, LLC—acquired majority ownership and control of Triller for approximately $27,800,000.  (*Id.* at ¶ 4; Purchase Agreement [#33-5] at 2–20; Gura Decl. [#35-4] at ¶ 3; Lu Decl. [#35-1] at ¶ 2.)  In anticipation of the closing, Carnegie Technologies and Triller executed an Amended and Restated Administrative Services Agreement, which addressed Carnegie Technologies' continued assistance to Triller during the transition period.[1]  (Leger Decl. [#33-1] at ¶ 4; Services Agreement [#33-2] at 2–19.)  On the closing date of the October 2019 transaction, Triller's debt for administrative services was recorded as a Promissory Note payable to Carnegie Technologies in the amount of $4,280,109.

---

[1]  The Services Agreement was executed on September 9, 2019.  (Leger Decl. [#33-1] at ¶ 6; Services Agreement [#33-2] at 2–19.)  Due to a scrivener's error, the Note references a Services Agreement dated August 29, 2019.  (Leger Decl. [#33-1] at ¶ 6; Note [#33-3] at 2.)

(Leger Decl. [#33-1] at ¶ 5; Note [#33-3] at 2–4.)  There were additional agreements executed at the time of the sale—the Contribution and Purchase Agreement, the Limited Liability Company Agreement of Triller HoldCo LLC, and the Management Consulting Agreement—between related parties other than Carnegie Technologies and Triller.  (Gura Decl. [#35-4] at ¶ 3; Purchase Agreement [#33-5] at 2–20; LLC Agreement [#35-4] at 79–130; Management Consulting Agreement [#35-4] at 153–65.)

Contemporaneous with the closing of the October 2019 transaction, the Note payable to Carnegie Technologies was assigned to Triller Legacy.  (Gura Decl. [#35-4] at ¶ 7; Assignment [#33-4] at 2–9.)  Triller takes the position that this assignment was a novation, in that it released all of Triller's obligations under the Note upon the assignment.  Carnegie Technologies takes the position that the assignment did not forgive or release the debt recorded by the Note, and that Triller remains liable for the amounts due and owing on the Note.

During the 60-day transition period referenced in the Services Agreement, Carnegie Technologies' personnel provided continued services for the benefit of Triller.  (Leger Decl. [#33-1] at ¶ 8.)  Carnegie Technologies determined appropriate percentages of those employees' time and salary to allocate to Triller.  (*Id.*)  Carnegie Technologies also paid, with its own funds, invoices for goods and services provided to Triller by outside vendors.  (*Id.*)  Carnegie Technologies then sent invoices to Triller to both receive compensation for employee time and to receive reimbursement for bills paid on Triller's behalf.  (*Id.*)  Triller failed to pay the invoices. (*Id.*)

Karen Leger, Controller of Carnegie Technologies, sent a letter to Mike Lu, Chief Executive Officer of Triller, on January 10, 2020, notifying him of Carnegie Technologies' intent to accelerate the amount due under the Note as a consequence of the failure to pay the

invoices due and owing under the Services Agreement.  (*Id.* at ¶ 9; Default Ltr. [#33-8] at 2–3.)
After Triller refused to pay the invoices, Carnegie Technologies requested its counsel to
accelerate the Note in a letter dated February 26, 2020.  (Leger Decl. [#33-1] at ¶ 9; Acceleration
Ltr. [#33-9] at 2–4.)  Triller has continued to refuse to pay the Services Agreement invoices and
the amount due under the Note.  (Leger Decl. [#33-1] at ¶ 9.)

On April 22, 2020, Triller HoldCo and Triller Acquisition submitted an arbitration
demand in California against Triller Legacy, Carnegie Technologies, and its affiliated companies
(Carnegie Technologies Holdings, Denali Digital Media, and Denali Publishing) for intentional
misrepresentation in connection with the Triller sale.  (Gura Decl. [#35-4] at ¶ 4; Arbitration
Demand [#35-4] at 199–213.)

Carnegie contends that as of the date of Leger's declaration (October 30, 2020), Triller
remains indebted to Carnegie Technologies in the amount of $4,280,109 in principal, plus all
overdue and unpaid interest in the amount of $457,679.50.   (Leger Decl. [#33-1] at ¶ 12.)
Carnegie also contends that Triller remains indebted to Carnegie Technologies in the amount of
$339,360.81, plus overdue and unpaid interest in the amount of $28,177.99 for transition services
provided under the Services Agreement after the closing of the October 2019 transaction.  (*Id.* at
¶ 16; Carnegie Technologies Invoices [#33-7] at 2–4.)

**D.    Analysis**

This case pleads a breach-of-contract action based on the alleged breach of Triller's
obligations under the Amended Services Agreement and brings suit under the Promissory Note.
As this case arises under the Court's diversity jurisdiction, Texas law governs this action.  *See
Hermann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002).  Texas law
also governs the construction of the parties' Agreement and the Promissory Note underlying this

suit.  (Services Agreement [#33-2] at 15, ¶ 17.10.)   However, California law governs the construction of the Note Assignment that allegedly relieves Triller of its liability to Carnegie Technologies.  (Assignment [#33-4] at ¶ 7.)

> i.   <u>Carnegie Technologies is entitled to summary judgment on its claim for breach of the Services Agreement.</u>

Carnegie Technologies argues it is entitled to summary judgment on its claim for breach of the Services Agreement.  The Court agrees.   Texas law requires proof of the following elements for a breach of contract claim: (1) existence of a valid contract between the parties; (2) performance by the plaintiff as required by the contract; (3) defendant's breach of the contract; and (4) damages suffered by the plaintiff as a result of defendant's breach.  *Pathfinder Oil & Gas, Inc. v. Great Western Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

There is no dispute that the Services Agreement is a valid contract executed between Carnegie Technologies and Triller on September 9, 2019.  (Services Agreement [#33-2] at 2–19.) The stated purpose of the Services Agreement was for Carnegie Technologies to continue to provide administrative services for a period of 60 days following the termination of the Services Agreement by a Change of Control in the company.  (*Id.* at 2.)  These services are defined by the Agreement as "Tax Services, HR services, MIS Services, Accounting Support Services, and Management Services."  (*Id.* at 4.)

Triller Acquisition gained control of Triller on October 8, 2019, under the Contribution and Purchase Agreement.  (Purchase Agreement [#33-5] at 1.)  Carnegie Technologies was therefore required to provide the transition administrative services described in the Services Agreement to Triller for the following 60 days, or until December 7, 2019.   Carnegie Technologies provided these services during the relevant time period, thereby completing its performance under the contract.  (Leger Decl. [#33-1] at ¶ 8.)

Triller's refusal to pay the past-due invoice amounts is a material breach of its obligations and agreements under the Services Agreement.  Carnegie Technologies made a written demand for payment of the invoices on January 10, 2020, and gave Triller the requisite 30-day period to cure the breach by paying the balance of $339,284.53 plus the per diem interest rate of $92.70.  (Default Ltr. [#33-8] at 2–3.)  The letter warned Triller that if it did not receive payment in full for the balance under the Services Agreement by February 10, 2020, it would accelerate the principal balance due and owing under the Note.  (*Id.* at 2.)

Triller failed to pay the past-due invoices within the 30-day cure period.  (Acceleration Ltr. [#33-9] at 2–4.)  Carnegie Technologies sent Triller a letter, dated February 26, 2020, providing formal written notice of the acceleration of the Note due to Triller's failure to satisfy its obligations under the Services Agreement, demanding payment of the full amount due and owing under the Note.  (*Id.*)  Triller has still failed to pay the invoices billed for the services provided under the Agreement.  (Leger Decl. [#33-1] at ¶ 8.)  Due to Triller's failure to pay the amounts due, Carnegie Technologies has suffered damages.  (*Id.* at ¶ 16.)

Triller has not provided any summary judgment evidence to refute Carnegie Technologies' evidence that it performed the services required under the Services Agreement, that monies are owed, that notice of default was given, and that payment was not made. Carnegie Technologies has therefore established that Triller has breached the parties' Services Agreement and that it is entitled to summary judgment on this claim.

  ii. <u>Carnegie Technologies has established its entitlement to enforce the Promissory Note.</u>

Carnegie Technologies has also established that it is entitled to enforce the Promissory Note.  To prevail on a motion for summary judgment to enforce a promissory note, the plaintiff must establish that: (1) a note exists, (2) the plaintiff is the legal owner and holder of the note, (3)

the defendant is the maker of the note, and (4) a certain balance remains due and owing under the note. *Suttles v. Thomas Bearden Co.*, 152 S.W.3d 607, 611 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

It is undisputed that the Promissory Note dated October 8, 2019, executed between Carnegie Technologies and Triller exists. (Note [#33-3] at 2.) By the Note, Triller promises to pay to the order of Carnegie Technologies the principal sum of $4,280,109, together with all interest accruing at a fixed rate of 10% per annum. (*Id.*) To establish the existence of the note, the holder need only provide "[a] photocopy of the promissory note, attached to an affidavit in which the affiant swears that the photocopy is a true and correct copy of the original note." *Blankenship v. Robins*, 899 S.W.2d 236, 238 (Tex. App.—Houston [14th Dist.] 1994, no writ). Leger has sworn that the copy of the Note is true and correct; that Carnegie is the holder of the Note; and that Triller is the maker. (Leger Decl. [#33-1] at ¶ 10.)

Finally, the balance remains due and owing under the Note. The Promissory Note provides that an "Event of Default" gives Carnegie Technologies "the right to accelerate payment of the unpaid Principal Amount and all accrued, unpaid interest payable with regard to the Note." (Note [#33-3] at 2–3.) The Note defines an Event of Default" as "(a) Failure by Triller to make any required payment of principal, accrued interest or any other amount under this Note when due and payable; or (b) The failure of Triller to materially comply with any of its obligations, agreements and covenants herein or in the Services Agreement." (*Id.*)

After Triller failed to cure its default within the 30-day cure period by paying the outstanding invoices under the Services Agreement, Carnegie Technologies sent Triller a letter, dated February 26, 2020, providing formal written notice of the acceleration of the Note based

on Triller's failure to comply with obligations under the Services Agreement.  (Feb. 26, 2020 Ltr. [#33-9] at 2–4.)  To date, Triller has not tendered payment to Carnegie Technologies.

Carnegie has therefore established all four elements of its suit on the Promissory Note. The only remaining issue before the Court is whether there is merit to Triller's affirmative defense of novation.  Triller argues that it is no longer liable as the maker of the Note because the assignment of the Note constituted a novation that released it of all of its contractual obligations. The Court already considered this argument at the motion-to-dismiss stage and rejected it, concluding that Triller had failed to prove the defense as a matter of law from the face of the contracts attached to or referenced by the pleadings.  In its Order denying Triller's motion to dismiss, the Court left open the possibility that Triller could provide additional evidence to prove its defense in a motion for summary judgment or at trial.

### iii.   The Court will consider Triller's novation argument despite its failure to formally plead the affirmative defense.

Under Texas law, a novation is an affirmative defense to a claim for breach of contract. *Fulcrum Cent. v. Autotester, Inc.*, 102 S.W.3d 274, 277 (Tex. App.—Dallas 2003, no pet.).  As previously noted, Triller never filed an answer in this case and has therefore not formally pleaded the affirmative defense of novation.  "The failure to plead an affirmative defense generally results in waiver of that defense."  *Garrison Realty, L.P. v. Fouse Architecture & Interiors, P.C.*, 546 Fed. App'x 458, 465 (5th Cir. 2013); *see also* Fed. R. Civ. P. 8(c).  "A court may excuse the failure to plead an affirmative defense, however, if the opposing party is not prejudiced." *Garrison Realty*, 546 Fed. App'x at 465.

Carnegie Technologies has had notice of Triller's novation defense since the filing of Triller's early motion to dismiss.  It has therefore had ample opportunity to argue why the defense of novation does not defeat its suit on the Promissory Note and will not suffer prejudice

by the Court's consideration of the defense in the context of Carnegie Technologies' summary judgment motion.  *See Std. Waste Sys. v. Mid-Continent Cas. Co.*, 612 F.3d 394, 398 (5th Cir. 2010) (excusing failure to plead affirmative defense because there was no unfair surprise or prejudice to opposing party).  The Court will therefore excuse Triller's failure to formally plead the defense and evaluate the merits of the defense, now with the benefit of a summary-judgment record.

      iv.    <u>Triller cannot prevail on its novation defense.</u>

"Novation is the creation of a new obligation in the place of an old one, by which the parties agree that a new obligor will be substituted to perform the duties agreed upon by the old contract, while the original obligor is released from performing those duties."  *Vandeventer v. All Am. Life & Cas. Co.*, 101 S.W.3d 703, 712 (Tex. App.—Fort Worth 2003, no pet.).

The elements of a novation under Texas and California law are essentially the same.  To establish a novation, the party raising the defense must prove: (1) the existence of a previous, valid obligation; (2) a mutual agreement of the parties to a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract.  *RM Crowe Prop. Servs. Co., L.P. v. Strategic Energy, L.L.C.*, 348 S.W.3d 444, 448 (Tex. App.—Dallas, no pet.) (*citing Vickery v. Vickery*, 999 S.W.2d 342, 356 (Tex. 1999)); *Harper v. Charter Commc'ns, LLC*, No. 2:19-CV-00902-WBS-DMC, 2019 WL 3683706, at *6 (E.D. Cal. Aug. 6, 2019) (citing *Young v. Benton*, 21 Cal. App. 382, 384 (3d Dist. 1913)).  Where a novation occurs, only the new agreement may be enforced.  *Honeycutt v. Billingsley*, 992 S.W.2d 570, 576 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

Not every assignment constitutes a novation.  *See In re Trejos*, 374 B.R. 210, 217 (9th Cir. B.A.P. 2007) ("An assignment by its very nature substitutes one entity for another as a

holder of rights.  To hold that this substitution in and of itself constitutes a novation would be to hold that every assignment constitutes a novation of the underlying contract.").  The critical distinction between assignment and novation is the intent to completely release the original obligor of its obligations under the original contract.  Both Texas and California law on novation emphasize this requirement.  *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 347 (Tex. 2006); *Grand Ave. Partners, L.P. v. Goodan*, 25 F. Supp. 2d 1064, 1068 (C.D. Cal. 1996).

"Generally speaking, a party cannot escape its obligations under a contract merely by assigning the contract to a third party."  *Seagull Energy E & P*, 207 S.W.3d at 346–47.  "Thus, as a general rule, a party who assigns its contractual rights and duties to a third party remains liable unless expressly or impliedly released by the other party to the contract."  *Id.* at 347.  Similarly, under California law, to establish a complete release of the original obligor, it must "clearly appear" that the parties "intended to extinguish rather than merely modify the original agreement."  *Grand Ave. Partners*, 25 F. Supp. 2d at 1068 (internal citation and quotation omitted).  *See also Quicksilver Res., Inc. v. Eagle Drilling, L.L.C.*, No. CIV.A. H-08-868, 2009 WL 1312598, at *8 (S.D. Tex. May 9, 2009) ("It is stated as a general rule that 'a party to a contract may not, unless authorized by the other party, either in the contract itself of otherwise, so assign the contract as to escape liability for the performance of the acts or duties imposed upon him by its terms,' but the assignor remains liable to the other party for the proper performance by his assignee.") (quoting *Walker v. Mills*, 78 P.2d 697, 699 (Okla. 1938) (quoting American Jurisprudence and Corpus Juris Secundum)).

The assignment at issue here was executed in conjunction with the October 2019 Triller sale and effectuates the assignment of the Promissory Note from Triller, as assignor, to Triller

Legacy, as assignee.  (Note Assignment [#33-4].)  The Assignment describes the "Intercompany Debt" owed by Triller to Carnegie Technologies pursuant to the Services Agreement that is evidenced by the Promissory Note.  (*Id.* at 2.)  The Assignment memorializes Triller's desire "to assign, transfer, and convey the Note in its entirety" to Triller Legacy.  (*Id.*)  By the assignment, Triller Legacy "expressly assume[d] all rights, obligations, liabilities, and duties of [Triller] arising with respect to the Note."  (*Id.* at ¶ 1.)  Triller Legacy specifically agreed "to perform any and all unperformed obligation of Assignor under and pursuant to the Note (including, without limitation, the obligation to pay all interest accruing on the outstanding balance of the Intercompany Debt after the Effective Date)."  (*Id.*)

Triller bears the burden of proving its affirmative defense of novation.  *Fulcrum Cent.*, 102 S.W.3d at 277.  The Court already concluded, in reviewing the language of the Assignment, that it contains no language expressly discharging or releasing Triller of its contractual obligations.  Triller now argues that the terms "transfer" and "convey" are not typically used in the assignment of contractual rights and obligations and their use is evidence of an intent to completely extinguish the original agreement and release Triller of its liability under the Note. Triller also points to the absence of language indicating that Triller would remain liable under the Promissory Note, principally or otherwise.  Yet, Triller does not cite any legal authorities that support these assertions under California or Texas law.

It may be true that novations typically include language assigning, transferring, and conveying contractual rights, but what is missing from the Assignment is clear language releasing and discharging Triller from its obligations under the Note or otherwise clearly expressing the shared intent of the parties to effectuate a novation.  An example of such language would be a provision similar to the following:

> [The Assignment] shall constitute a novation where Assignee shall assume all rights, liabilities, debts, and other obligations of Assignor, and Assignor shall be released and forever discharged from any debts, obligations, claim, causes of action, duties, or other demands upon it to perform . . . .

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group Inc.*, No. CV 14-03053 MWF, 2018 WL 1157752, at *9 (C.D. Cal. Mar. 2, 2018).  This type of language does not appear in the Assignment or any of the other agreements executed at the October 2019 closing.

Furthermore, an intent to release Triller from liability on the Note cannot be inferred from these or any of the other contracts executed at the October 2019 closing in the summary judgment record.  The Purchase Agreement does reference the "forgiveness" of various intercompany debts and includes letters noting the forgiveness or repayment of these debts, but the Promissory Note is not among those debts listed as forgiven.  (Purchase Agreement [#33-5] at 4, 13–19.)  Section 1.6(a)(vii) of the Purchase Agreement provides that Triller Legacy would deliver at closing "[e]vidence of the forgiveness or assignment of the obligations of [Triller] in respect of the indebtedness and other accounts payable as set forth on Schedule 1.5(a)(vii)."  (Purchase Agreement [#33-5] at 4.)  Schedule 1.5(a)(vii) of the Purchase Agreement's Disclosure Schedules references the forgiveness of "the August Note described on Schedule 2.12(iv)" but does not list the October 2019 Promissory Note as forgiven.  (Disclosures [#33-6] at 3.)  Instead, Schedule 1.5(a)(vii) describes the assignment of "the Intercompany Note described on Schedule 2.19" to Triller Legacy.  (*Id.*)  Section 2.19 discloses the "Intercompany Note" as an existing liability but again does not reference the forgiveness of the Note.  (Disclosures [#33-6] at 4.)  There is no language in the Note Assignment or the Purchase Agreement and its Disclosure Schedule that "clearly" evidences an intent to extinguish the

original Note, rather than merely modify the original agreement by assigning the debt to Legacy. *See Grand Ave. Partners*, 25 F. Supp. 2d at 1068.

Finally, Triller's summary-judgment evidence, which consists of various declarations by those involved in the sale and closing regarding their understanding of the effect of the Assignment, does not alter the Court's interpretation of the contracts at issue.  Triller's summary judgment evidence consists of four declarations, all of which aver that the intent of the parties was to engage in a "debt-free" transfer of a controlling interest in Triller.  (Lu Decl. [#35-1]; Flock Decl. [#35-2]; Lee Decl. [#35-2]; Gura Decl. [#35-2].)  These declarations all state that it was the understanding of Triller that the parties intended to release Triller of its obligations under the Note.

Mike Lu, Chief Executive Officer of Triller, states in his declaration that "[b]ased on my understanding of the day-to-day negotiations of the material terms of the transactions leading to the Triller sale, the Triller sale transaction was at all times contemplated and intended to be a takeover of Triller on a debt-free basis, and that all debt of Triller would be either paid off or forgiven, including but not limited to the debt evidenced by the Promissory Note."  (Lu Decl. [#35-1] at ¶ 3.)  Mr. Lu further states that it was in reliance on oral and written representations the attorneys for Carnegie Technologies that the takeover of Triller would be on a debt-free basis that he executed the Closing Documents.  (*Id.* at ¶ 4.)  John Flock, an attorney actively involved in the Triller sale as counsel for Triller HoldCo, similarly states in his declaration that he was informed by Carnegie Technologies' attorneys that "Triller's liability under the Promissory Note would be wholly extinguished following the Closing."  (Flock Decl. [#35-2] at ¶ 7.)  Evan Lee, another attorney representing Triller HoldCo in the sale, explains that the decision to assign rather than forgive the Promissory Note was a last-minute change to the structure of the Triller

sale, and that he was assured that "this change in structure would not affect the ultimate goal of extinguishing Triller's liability pursuant to the Promissory Note."  (Lee Decl. [#35-3] at ¶ 9.) Mr. Lee states that, although he was not provided a draft version of the Assignment or Promissory Note, that he reviewed these documents at closing and that it was his understanding based on the language of the Assignment that the Assignment extinguished Triller's liability under the Note.  (*Id.* at ¶ 11.)  These declarations take the position that Carnegie Technologies actively misrepresented its intent and misled Triller into agreeing to the Assignment rather than forgiveness of the Promissory Note.

That Triller perceived the Assignment to extinguish its contractual obligations is not determinative of whether the Assignment had the legal effect of a novation.  The undersigned already addressed this issue in its Order denying Triller's motion to compel discovery, which sought production of e-mail communications related to the execution of the Assignment and Note in an attempt to prove the parties' intent to discharge Triller of its obligations.  (*See* Order [#57].)  The Assignment at issue in this case contains an integration clause, providing that the Assignment "is the final expression of, and contains the entire agreement between, the parties with respect to" the assignment of the Note.  (Assignment [#33-4] at ¶ 6.)  The undersigned previously held and reiterates here that "a party to a written contract cannot justifiably rely on oral misrepresentations regarding [a] contract's unambiguous terms." *Barrow-Shaver Resources Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 498 (Tex. 2019).  Additionally, the "parol evidence rule bars consideration of evidence that contradicts, varies, or adds to the terms of an unambiguous written agreement."  *Id.* at 483.  "Surrounding facts and circumstances cannot be employed to make the language say what it unambiguously does not say or to show that the

parties probably meant, or could have meant, something other than what their agreement stated." *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 757 (Tex. 2018) (internal citations omitted).

Although Triller may indeed have misunderstood the effects of the contracts at issue, Triller was represented by counsel during the 2019 sale, and Mr. Lee attests that he reviewed the language of the Assignment and Promissory Note prior to the execution of the documents. The parties are sophisticated business entities, and the contracts were executed by way of an arm's length transaction. "A party to an arm's length transaction must exercise ordinary case and reasonable diligence for the protection of his own interests . . . ." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 658 (Tex. 2018). Triller cannot prevail on its novation defense because it has not carried its burden to prove that the parties had a meeting of the minds as to the intent to discharge and release Triller of all contractual obligations flowing from the Promissory Note.

In summary, nothing in the Purchase Agreement, Disclosure Schedules, or Assignment releases Triller from its obligations under the Note or reflects the intent of the parties to do so. Because Triller has not established its novation defense as a matter of law, it remains liable on the Note, despite the Assignment of the Note to Triller Legacy on the closing date of the October 2019 transaction.

This ruling, if adopted by the District Court, is not the last word on the rights and obligations of the parties associated with the Triller 2019 sale. Triller is involved currently in the pending arbitration in California. This recommendation does not address the various other claims and causes of action that might be raised among and between the parties with respect to the liabilities associated with the Services Agreement and Promissory Note. It merely addresses the legal questions presented before the Court by this breach-of-contract action.

### III. Triller's Motion for Leave to File a Limited Answer

Before the Court is also Triller's motion for leave to file a limited answer.  Triller asks the Court to permit it to file a belated answer to formalize its affirmative defense of novation and to assert for the first time the affirmative defense of illegality.  The Court should deny the motion.

The Court denied Triller's motion to dismiss on October 20, 2020, making Triller's answer due on or before November 3, 2020.  *See* Fed. R. Civ. P. 12(a)(4)(A) (answer due within 14 days after denial of motion to dismiss).  Triller filed its motion for leave to file a limited answer on April 6, 2021, approximately five months later, months after the expiration of the deadline to file amended pleadings and all Scheduling Order deadlines in this case, after Carnegie Technologies' motion for summary judgment had been fully briefed and pending for over four months, after the Court denied Triller's motion to compel arbitration, and after the Court denied Triller's motion to compel discovery.

Triller argues that the Court should excuse its late filing and permit it to assert the defense of illegality because all of the elements of the defense are apparent from Carnegie Technologies' pleadings, such that Carnegie Technologies would suffer no prejudice from permitting the late answer.  Yet, allowing Triller to re-litigate this case under a new theory and new defense at this late stage of the proceedings would prejudice both Carnegie and the Court, require the issuance of a new scheduling order and an entirely new round of dispositive motions, and set an undesirable precedent condoning Triller's piecemeal litigation approach.   Triller argues that the pleadings themselves demonstrate the illegality of enforcing the Note against Triller, yet Triller neglected to assert the defense of illegality at any prior stage in the proceedings, despite having access to all information necessary to do so.  Triller, facing defeat on

its novation defense and other motions it has brought before the Court, simply wishes to re-litigate this case under a different theory.  It should not be permitted to do so.

Moreover, Triller has not demonstrated the excusable neglect or good cause required to permit it to file an untimely answer.  Rule 6 of the Federal Rules of Civil Procedure addresses the extension of time where an act must be done within a specified time and requires a showing of good cause.  *See* Fed. R. Civ. P. 6(b)(1)(B).  Where the time has expired to perform the act at issue, the party must present a motion demonstrating excusable neglect.  *Id.*  "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."  *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (internal citations and quotations omitted).  Triller has offered no explanation for its failure to file an answer in this case or its decision to wait until this late stage in the proceedings to attempt to remedy this failure, other than admitting that it simply failed to understand the governing federal rules, to calendar the deadline, and to meet its pleading obligations in this case.  Because Triller has not satisfied its burden to demonstrate good cause and excusable neglect, and permitting it to assert new defenses at this late stage in the proceedings would result in prejudice, the Court should deny the motion.

## IV.  Damages

Carnegie Technologies has established its entitlement to summary judgment on its claim for beach of the Services Agreement and its suit on the Promissory Note.  Carnegie Technologies is therefore entitled to a final judgment awarding damages under the Services Agreement and the Note.

The following chart illustrates the balance due and owing under the Services Agreement:

| Invoice # | Due Date | Amount | Days | Per Diem Interest | Total Interest Due |
|---|---|---|---|---|---|
| 1230 | 12/29/2019 | $203,050.84 | 306 | $55.63 | $17,022.89 |
| 1231 | 1/2/2020 | $114,238.56 | 302 | $31.30 | $9,452.07 |
| 1232 | 1/9/2020 | $21,071.41 | 295 | $5.77 | $1,703.03 |
| | **TOTAL** | $338,360.81 | | **TOTAL INTEREST** | $28,177.99 |

(Leger Decl. [#33-1] at ¶ 16; Invoices [#33-7] at 2–4; Services Agreement [#33-2] at 5, § 3.3.) Carnegie Technologies is entitled to damages in the amount of $338,360.81, plus accrued interest as of October 30, 2020, in the amount of $28,177.99.

With respect to the Promissory Note, Carnegie Technologies is entitled to judgment in the amount of $4,280,109 (original amount of the debt) plus interest accrued in the amount of $457,678.50, for a total amount due of $4,737,787.50, plus any additional interest owed.  (Leger Decl. [#33-1] at ¶ 10.)

### V.  Conclusion and Recommendation

Having considered the motions before the Court, the responses and replies thereto, the relevant contracts, and the governing law, the undersigned **recommends** the following:

- Plaintiff Carnegie Technologies, LLC's Motion for Summary Judgment [#33] be **GRANTED** and the Court order, adjudge, and decree that Triller is liable to Carnegie Technologies for $5,104,326.30, comprised of (1) liability under the Services Agreement of $366,538.80, plus $28,177.99 in overdue and accrued interest for a total amount of $366,538.80; and (2) liability under the note of $4,280,109.00, plus $457,678.50 in overdue and accrued interest, for a total amount of 4,737,787.50, plus any additional interest owed.

- Defendant's Motion for Leave to File Limited Answer [#60] be **DENIED**.

## VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 7th day of June, 2021.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE